# NATHANIEL SHEETS v. FRANK H. ATHERTON.

*Jurisdiction of fish warden.    Arrest without warrant.    Subsequent prosecution.    S. 1, No. 117, Acts 1882.*

1.  The jurisdiction of a fish warden, appointed by the selectmen of a town under s. 1, No. 117, Acts of 1882, is not limited to the town for which he is appointed, but extends throughout the State.

2.  Such warden may arrest without warrant a person violating the provisions of R. L., chap. 170 and any amendment thereto. This right is fairly given by the statute.

3.  While such arrest can only be made without warrant where the offender is found and taken in the very act of violation, it is a taking in the act, if the officer finds the offender in the violation and pursues closely until he overtakes him.  The final caption relates back to the beginning of the attempt to arrest.

4.  The defendant found fish upon the ice recently caught, and seines set in the lake for catching them.  The plaintiff was engaged in drawing one of these seines from the water.  *Held,* that the defendant was justified in arresting the plaintiff for illegal fishing.

5.  And the warden need not attempt to arrest the fisherman until after he has taken possession of the nets.  If he at once begins a seizure of the implements, and as soon as he has got possession of these, starts to arrest the fisherman, who in the mean time has moved away, it will be a taking in the act.

6.  While the statute requires the warden to prosecute the person whom he arrests, and while the arrest might be illegal if he released the offender without any attempted prosecution, it is enough if he delivers his prisoner over to the State's Attorney of the county and furnishes him information as to the offense and arrest.

This was an action for false imprisonment.  Plea, the general issue, with notice of special matter in justification.  Heard at the September Term, 1889, TYLER, J., presiding, upon the report of a referee and exceptions of the plaintiff thereto.  Judgment for the defendant.  The plaintiff excepts.

The plaintiff was arrested in the town of Swanton by the defendant, who justified the arrest as fish warden for the town of Waterbury.  The referee found that defendant was duly appointed by the selectmen of that town and did, in making the arrest in question, act under the authority of that appointment. The arrest was made without warrant.

The plaintiff claimed that when arrested by the defendant he was not violating the fish laws. The referee reported the following facts bearing upon this question:

" On the 27th day of March, 1884, and for some time before that certain parties were engaged in fishing with seines in Lake Champlain near Hog Island. The fish commissioner, Mr. Herbert Brainerd, requested the defendant and said Tuttle to go there in pursuance of their duties as fish wardens. Said Atherton and Tuttle employed Jerome Dumas, Lewis Wood, Joseph Barton to assist them in the discharge of their duties as fish wardens, and on the morning of the 27th day of March said Atherton and Tuttle by virtue of their commission and Dumas, Barton and Wood as their assistants took the train for Swanton, and on arrival there got a team and were driven to the west shore of Hog Island on Lake Champlain, arriving there about ten o'clock in the forenoon. They drove along down to a red fishing shanty, a little over a half mile northerly of the fishing grounds. Two seines were set for fishing at the fishing grounds and fishermen were engaged in fishing with the seines. The officers stopped at the door of the shanty and made some inquiry of some person there if they could get on to the ice there, and were informed that they could not. On this shanty there was a sign or writing as follows : " All dead beats and Burlington pimps thrown out here." The party in the wagon then drove along southerly and over the Portland and Ogdensburg railroad crossing, when they saw men going south in the highway, and some on the ice and some men across lots from the east. The party in the wagon continued along to where there were three barrels on the shore of the lake with fish in them, quite a good many. These fish were wall-eyed pike, and some perch, and perhaps some suckers. A basket stood near by with some fish in it. Some of these fish had the appearance of being caught that morning. A little southerly and westerly out in the lake about three or four rods a seine was set under the ice, and about five or six rods northerly of this another seine was set in the lake under the ice by means of holes cut in the ice. The defendant and his men went out on the ice between where the two seines were located, and saw the men at each of the seines drawing them out of the water.

" There were three men at this time at each of the seines drawing them out of the water ; one of the men at the south seine hauling it out of the water was the plaintiff. Another

Sheets *v.* Atherton.

man at the south seine helping to haul it out was Richard Sheets, a brother of the plaintiff; at the north seine a man by the name of Coutier was helping haul out the seine. The plaintiff was at the red shanty when the defendant and his men came along in the morning to the fishing ground, and about the time the officers left the shanty the plaintiff and some others went down to the fishing grounds from the shanty, arriving at the fishing grounds about the same time the defendant and his party arrived there."

Thereupon the defendant and his assistants endeavored to take possession of the seines. The fishermen resisted. There was a sharp scuffle and some threatenening talk on both sides. The plaintiff was present, but it did not appear that he assaulted the officers or took part in the discussion. Finally the officers got possession of the nets. They then turned their attention to the fishermen. The report continues :

" The defendant then requested Dumas to come with him. The defendant saw two men down on the ice that he thought he wanted ; the men were running north on the ice. The defendant and Dumas followed them, taking the highway while the men were on the ice. These men were Nathaniel Sheets, the plaintiff, and Joseph Coutier. These men went on the ice till they got to the P. & O. railroad ; they then went over the railroad down to the shanty. When they went over the railroad they were out of sight of the defendant and Dumas, but at no other time ; they were about ten rods ahead of the defendant and Dumas. The defendant and Dumas went down in front of the red shanty and there arrested the plaintiff and Coutier and there handcuffed them together and went back to the fishing ground with them where the team was."

With reference to what was done with the plaintiff by the defendant after the arrest the report finds :

" The party arrived at Swanton village about one o'clock in the afternoon. On their arrival at Swanton the prisoners were informed that the officers had telephoned or telegraphed to St. Albans for the State's Attorney to come to Swanton at once to try the prisoners then at Swanton, and that the officers were informed by the State's Attorney that he could not come that day and not till the next day on account of engagements. The

officers then inquired of all the prisoners if they would as soon go to St. Albans to be tried that afternoon as to wait over at Swanton, and they all said they would, and no objection being made the officers with the prisoners started for St. Albans. They arrived at St. Albans at four or five o'clock in the afternoon, and very soon after their arrival deputy sheriff W. M. Ladd arrested the plaintiff, Richard Sheets and Coutier on complaints made by the State's Attorney, and the defendant and his men had no further charge of the prisoners."

*Cross & Start, D. G. Furman* and *A. E. Ayers,* for the plaintiff.

1. The authority of the fish warden is confined to the town for which he is appointed.

2. The defendant could not arrest without a warrant. The statute does not give the right and it cannot be inferred. *Phillips* v. *Fadden,* 125 Mass. 198 : *Drew* v. *Hilliker,* 56 Vt. 641 ; *Territory* v. *Baca,* 2 N. M. 183 ; *Webster* v. *People,* 14 Ill. 365.

3. If the defendant might arrest without process for a violation of the fish law, he could only do so when the offender was taken in the very act. He could not arrest at another place after the commission of the crime. The plaintiff was arrested a half a mile from where the alleged violation was done. *Phillips* v. *Fadden,* 125 Mass. 198, *Bright* v. *Patton,* 8 Cent. L. J. 711 ; *Commonwealth* v. *Casey,* 12 Cush. 246 ; *Commonwealth* v. *McLaughlin,* 12 Cush. 615 ; 1 Bish. Crim. Law, ss. 181, 183 ; *Potts* v. *Potts,* 13 Western L. J. 147 ; *Cook* v. *Nethercote,* 6 Car. & Pa. 666 ; *Phillips* v. *Trull,* 11 John. Rep. 430.

The defendant was not violating the law, hence the justification fails. It is immaterial whether the defendant supposed he was or not. *Phillips* v. *Fadden,* 125 Mass. 198 ; *Holley* v. *Mix,* 3 Wend. 350.

It was the defendant's duty under the statute to prosecute the plaintiff. Not having done so he is liable *ab initio. Phillips* v. *Fadden,* 125 Mass. 198 ; *Brooks* v. *Stinson,* 108 Mass. 52 ; *Tubbs* v. *Turkey,* 3 Cush. 438 ; *Pepineau* v. *Bacon,* 110 Mass. 319.

*Wilson & Hall* and *W. P. Dillingham*, for the defendant.

The statute conferred jurisdiction on the defendant throughout this State. Laws of 1882, No. 117, s. 1.

The referee has found that the plaintiff was violating the provisions of R. L., chap. 170 or an amendment thereto. Hence his arrest was authorized by the statute.

The defendant did all he could to prosecute the plaintiff in behalf of the public. He was not bound to become a private prosecutor.

The opinion of the court was delivered by

Ross, J. This is an action of trespass for false imprisonment. The defendant justifies the arrest and imprisonment as fish warden of the town of Waterbury. The plaintiff contends that the judgment of the County Court is erroneous because the facts found by the referee fail to make out a justification in several particulars.

I. He contends that the defendant's jurisdiction as fish warden was limited to the town, by the selectmen of which he was appointed. The language of the act under which he was appointed is, s. 1, No. 117, Acts of 1882, "The selectmen of any town may appoint and remove at pleasure a person to be fish warden in their town, who may arrest on any of the waters of Lake Champlain, or on the shores thereof, any person found violating the provisions of chapter one hundred and seventy, Revised Laws, or any amendments thereof, and prosecute such offender before the proper tribunal." The other provisions of this section, which is an amendment of s. 3871, R. L., do not come under consideration in this case. He urges that the language, "A person to be fish warden in their town," limits his jurisdiction to the limits of the town. The language following, "who may arrest on any of the waters, public or private, of this State or on the waters of Lake Champlain, or on the shores thereof," is broad enough to give him jurisdiction throughout the State. The defendant urges that this general language, is limited by the language which precedes it to such of the

waters named as a.e within the town from which he is appointed. This construction would limit the right to arrest on the waters of Lake Champlain or on the shores thereof to fish wardens appointed from towns which border on the lake, and be inconsistent with the language, "The selectmen of *any* town may appoint," etc., a fish warden having this general jurisdiction. That it was the intention of the Legislature to give a fish warden so appointed from *any* town general jurisdiction throughout the State becomes more apparent when the language of s. 3871 which this amends is considered. That section in clear, undoubted terms gives a fish warden so appointed jurisdiction throughout the county in which the town appointing is situated. The language of the amendment plainly indicates an intention to increase the jurisdiction and powers of such officer. This contention is not sustained.

II.  He further contends that the section gave the defendant no authority to arrest without a warrant. The language is that he may arrest " Any person found violating," etc. This is only consistent with authority to arrest " on view," which is the language of the section of the statute amended. He could not well be armed with a warrant for the arrest of any one he might chance to find violating the law. To give the section this construction would defeat rather than carry out and enforce the manifest intention of the Legislature, which was to give speedy and summary proceedings against any person caught by such warden violating the law. The scope of this law is to furnish a greater supply of fish to all the inhabitants of the State, by preventing their destruction at particular seasons, and by methods deemed injurious. The provision for arrest by a fish warden of persons found violating the law, is one of *preventive justice.* *Spalding* v. *Preston,* 21 Vt. 9, (50 Am. Dec. 68) ; *State* v. *Intoxicating Liquor,* 55 Vt. 82 ; *In re* Powers, 25 Vt. 261. It is plainly intimated in *Drew* v. *Hilliker,* 56 Vt. 641, that the court considered that this section of the act authorized the arrest, without a warrant, of any person found violating the provisions of the law. When the language of the act is considered with reference

to the circumstances and the purpose to be accomplished, the intention to authorize such arrest without a warrant is as clearly manifest as it is in the cases cited by the plaintiff's counsel, where the statute in terms authorizes an arrest without a warrant. The defendant's justification does not fail because he made the arrest without a warrant.

III. The plaintiff properly contends that when a statute authorizes an arrest without a warrant, under circumstances in which such an arrest could not have been lawfully made without such statute, the arrest can only be justified when made under the exact circumstances prescribed by the statute; that the statute only authorizes such arrest when the person *is found violating the statute*. He further contends that it is not found by the referee that he has engaged in fishing, nor are such facts found by him as show that the plaintiff, on the occasion, was violating the law with reference to fishing. We think the referee has found such facts as show that the plaintiff was fishing in violation of the law when the defendant found him there with other fishermen on Lake Champlain. When the defendant arrived on the fishing ground, the referee has found there were barrels on the ice with fish in them, which had recently been taken from the lake; that there was a fishing basket there which had recently been emptied of fish, two nets or seines in the waters of the lake, and that he found the plaintiff helping take one of the seines out of the water. This clearly shows that some one was fishing then and there. The plaintiff was engaged with the others in helping to pull out the net. In such offense all engaged therein are principals. Taking the net, or seine, from the water was a part of the act of fishing with it. Fishing with it did not cease until the net was fully removed from the water. Besides the referee has found that the plaintiff made a pretty hostile threat of violence to officer Tuttle while the officers were endeavoring to gain possession of the net to prevent its further use in violation of the law. From the facts reported we hold that the defendant found the plaintiff engaged in fishing in violation of law, and had lawful right to arrest him without a warrant.

IV. It is further contended, that the defendant did not arrest him while engaged in the act; that he arrested him at the shanty some half mile from the fishing grounds, and that this was not a compliance with the law. We think the arrest must be deemed to have been made from the time and place when the pursuit began, the pursuit having been continuous until the arrest was made. An offender cannot make an arrest illegal by endeavoring to escape, by running away. But it is further contended that if the arrest is referred to the fishing ground, by the flight of the plaintiff and continuous pursuit of the defendant, it was not made while the plaintiff was engaged in fishing in violation of law. The same statute which authorizes the arrest, authorizes a seizure of the nets. From the report of the referee it is apparent that the officers were fully and actively engaged in enforcing the law from the time they arrived on the ground and found the plaintiff violating the law, to the time of the arrest. The officers must have a reasonable time to execute the law. They were as much authorized to seize the nets as to arrest those found fishing in violation of the law. They were not bound to make the arrest before they seized the nets. They were to do both as expeditiously as could reasonably be done under the circumstances, and in such manner as they judged would result in an effectual enforcement of the law in every particular. This requirement would not be complied with, if the officer, after finding one violating the law, should go away, and accomplish some independent business or engagement. He is, at once, to enter upon the enforcement of the law, in its several requirements, and continue his efforts with reasonable diligence, until he has accomplished its purpose. We think the arrest was made within the requirements of the law. We cannot yield to the claim of the plaintiff that the defendant, as fish warden, could not arrest him because he was only violating s. 2 of the act of 1882 and the penalty imposed is recoverable only in a civil action on the case. The facts reported do not necessarily confine the plaintiff's offense to that prescribed by s. 2 of the act. The right to arrest extends to all violations of the

chapter and amendments thereto regulating the right of fishing and gaming, some of which can be prosecuted criminally. Nor do we think it necessary that a criminal prosecution should be authorized, for the Legislature lawfully to authorize an arrest for the violation of law, as a preventative remedy, although the arrest is authorized to be made without warrant. The arrest without a warrant may be authorized simply to prevent a violation of law, or to prevent further immediate violation of it. *Spalding* v. *Preston, supra ; in re* Powers, *supra.*

V. The statute provides that such warden, on finding a person violating the law, may arrest " and prosecute such offender before the proper tribunal." It is now contended that the arrest made by the defendant fails of justification, because he did not prosecute the plaintiff for a violation of the law. It is argued that the arrest is authorized not only to prevent a further violation of the law, but to bring the offender before a proper tribunal for prosecution. We are not prepared to say that this contention is unsound, that an officer can make an arrest, and go no further unless he shows some good reason for releasing the offender. The defendant did turn the plaintiff over to the State's Attorney of the proper county for prosecution. We think this was all that the law required of him. By the amendment his right " to make complaint and prosecute for such offense," included in the section of the general law amended, is reduced to the right " to prosecute such offender before the proper tribunal." We think this is fairly complied with when he delivers the offender over to the proper complaining and prosecuting officer, of the place where the offense was committed and furnishes such officer proper information in regard to the offense and arrest. If the amendment had left the original section in full force so that the defendant was authorized *to make complaint and prosecute,* the case of *Phillips* v. *Fadden,* 125 Mass. 198, and other similar cases would have been to the point, and supported the plaintiff's contention. As amended the right to make complaint for the offense was taken away, and the only way in

(16)

Sheets *v.* Atherton.

which the defendant could prosecute the plaintiff before the proper tribunal was to present him for prosecution before such tribunal, unless he became a private prosecutor, which last we do not think was contemplated. Under the facts found, we do not think the plaintiff has any right to complain, that placing handcuffs upon him was such an abuse of authority as to render the defendant a trespasser *ab initio*. Such restraint was reasonable after what had occurred, and the threat which the plaintiff had made.

*We find no error in the judgment of the County Court, and the same is affirmed.*