## Case No. 15,266.

### UNITED STATES v. GRISWOLD.

[5 Sawy. 25; [1] 10 Chi. Leg. News. 50.]

District Court, D. Oregon. Oct. 9, 1877.

QUI TAM ACTION—ARREST—AFFIDAVIT.

1. The action provided for in sections 3490–3493, of the Revised Statutes, to recover a penalty and damages for making a false claim against the United States is a qui tam one, and may be commenced by any person who will, without the previous authority or consent of the district attorney of the United States, and therefore the complaint in such an action need not be subscribed by such district attorney, but the same is sufficiently "subscribed by the party or his attorney" within the meaning of sections 79 and 81 of the Oregon Civil Code, when it is "subscribed" by the attorney of the person who brings such action.

[Cited in U. S. v. Griswold, 24 Fed. 364.]

---

[1] [Reported by Numa Hubert, Esq., and here reprinted by permission.]

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

2. In such an action the United States is the plaintiff, and the defendant may be arrested and held to bail without an undertaking on the part of the plaintiff to the defendant for damages in case the arrest "be wrongful or without sufficient cause," as provided in section 107 of the Oregon Civil Code.

3. If the facts necessary to authorize such an arrest sufficiently appear in the complaint in such action and the same is verified by the oath of the informer or person bringing the same, it is an affidavit within the meaning of section 3492 aforesaid, and an order for the arrest of the defendant may be made thereon.

[This was an action by B. F. Dowell, who sues as well for himself as for the United States, against William Griswold, for certain penalties for the violation of an act of congress in presenting certain false claims. On June 2, 1877, an order was issued for the defendant's arrest, with bail fixed at $10,000, and on June 4th, the arrest was made, and bail given accordingly. The defendant now moves that the complaint against him be stricken out, and that he be discharged from arrest.]

Addison C. Gibbs and B. F. Dowell, for plaintiff.

H. Y. Thompson, for defendant.

DEADY, District Judge. This action is brought by B. F. Dowell, as well for himself as the United States, upon section 3490 of the Revised Statutes, to recover from the defendant the sum of forty thousand and ninety-six dollars and sixty-six cents alleged to be due the United States; for that the said defendant caused to be made and presented for payment at the treasury of the United States false and fictitious claims, purporting to be claims for supplies furnished on account of the Oregon Indian war of 1854, to the amount of nineteen thousand and forty-eight dollars and eighty-three cents; and also used false vouchers, rolls, etc., and combined with another for the purpose of obtaining the payment of such claims, by means of which he received from the treasury of the United States the said sum of nineteen thousand and forty-eight dollars and eighty-three cents in payment of the same. The complaint was verified by the oath of the informer, and signed by Messrs. Gibbs. and Stearns, and B. F. Dowell, attorneys of this court, as "attorneys for the plaintiff," and was filed May 30, 1877.

On June 2, the district judge, upon the application of "Mr. Addison C. Gibbs, of counsel for the plaintiff," under section 3492 of the Revised Statutes, and upon said complaint so verified, made an order for the arrest of the defendant, and fixed his bail thereon at the sum of ten thousand dollars, to be given in the manner and with the effect provided in sections 108, 109 of the Oregon Civil Code. Upon this order a writ of arrest was issued by the clerk, upon which the defendant, on June 4, was arrested and gave bail as therein provided. Afterwards the defendant moved to strike the complaint from the files, because it was not signed by the district attorney nor any one authorized to represent the United States, and for his discharge and the exoneration of his bail because there was no affidavit filed prior to the issuing of the writ, nor undertaking filed before the arrest was made.

By the Revised Statutes (section 5438) it is declared to be a crime punishable by fine and imprisonment to make or present for payment any false or fictitious claims against the United States or to that end, to make or use any false voucher, etc., or to combine with any person to obtain payment from the United States of any such claim. Section 3490 provides that if any person not in the military or naval forces of the United States shall do or commit any of the acts prohibited by section 5438, aforesaid, such person "shall forfeit and pay to the United States the sum of two thousand dollars," together with "double the amount of damages which the United States may have sustained by reason of the doing or committing such act," to be recovered in one action with the costs thereof. Section 3491 gives the district court within whose jurisdictional limits the person doing or committing such act shall be found, jurisdiction of such action; and provides that the same "may be brought and carried on by any person, as well for himself as the United States," * * * "at the sole cost and charge of such person, and shall be in the name of the United States, but shall not be withdrawn or discontinued without the consent, in writing, of the judge of the court and the district attorney, first filed in the case, setting forth their reasons for such consent." Section 3492 makes it the duty of the several district attorneys to be diligent to ascertain any violations of said section 3490 by persons found within their respective districts, "and to cause them to be proceeded against in due form of law for the recovery of such forfeiture and damages;" and provides that "such person may be arrested and held to bail in such sum as the district judge may order, not exceeding the sum of two thousand dollars, and twice the amount of the damages sworn to, in the affidavit of the person bringing the suit." Section 3493 provides that "the person bringing said suit and prosecuting it to final judgment shall be entitled to receive one half the amount, * * * he shall recover and collect; and the other half shall belong to and be paid over to the United States;" and such person shall "receive to his own use all the costs the court may award against the defendant," as in actions between private parties; but he "shall be liable for all costs incurred by himself in the case, and shall have no claim therefor on the United States."

These sections of the Revised Statutes are substantially taken from the act of March 2, 1863 (12 Stat. 696), entitled "An act to prevent and punish frauds upon the United

States." The action, improperly called a "suit"—thereby authorized to be "brought and carried on by any person as well for himself as the United States," is the action called at common law, qui tam, because the plaintiff, therein described himself as one "qui tam pro domino rege quam pro se ipso in hac parte sequitur"—who as well for the king as for himself sues in this matter. When, as in this case, a statute imposed a penalty for the commission of an act, and also gave such penalty in part to whoever would sue for it, and the remainder to the king or other public use, the action to recover such penalty, if brought by a private person, was brought in his own name and subject to his control. Although a judgment obtained therein was for the benefit of the king or other public use as well as the plaintiff, yet the action was, to all intents and purposes, the private action of the latter. 3 Bl. Comm. 160; 1 Bac. Abr. "Actions Qui Tam."

The fact that this action is required to be brought in the name of the United States and that it cannot be withdrawn or discontinued without the consent of the district attorney and the judge, it is still otherwise under the control of the informer. It is still an action which by the express authority of the statute may "be brought and carried on"—commenced and conducted—"by any person, as well for himself as the United States." The power to commence and conduct this action, necessarily implies the right to do so, and to employ attorneys for that purpose, irrespective of the district attorney. The statute has authorized Dowell to bring this action and conduct it at his own cost. Although the United States is the plaintiff, Dowell is its authorized representative, and not the district attorney, who is not authorized or required to act or interfere in the matter, otherwise than as expressly provided by the statute. For all purposes, except the discontinuance of the action, the attorney employed by the informer to commence and conduct the same is the attorney of the United States therein. Neither does the fact that the district attorney is required to be diligent to enforce the statute against persons violating it, make him the attorney of the United States in this action. Although it is his duty "to be diligent in inquiring into any violations" of the statute and to bring actions therefor in the name and for the benefit of the United States, he may not, and therefore congress has provided this alternative, that every person who will may do the same thing, "as well for himself as the United States;" and whichever—the informer or the district attorney—first commences an action for a particular violation of the statute, thereby excludes the other from so doing. 3 Bl. Comm. 160.

Neither does the provision in section 771 of the Revised Statutes which makes it the duty of the "district attorney to prosecute in his district * * * all civil actions in which the United States are concerned," authorize or require him to act as attorney for the plaintiff in this action. This section is general in its terms and necessarily qualified and restrained by the sections above cited, which relate to the commencement and conduct of this particular action. For that matter the United States is concerned in all qui tam actions, whether brought in its own name or that of a private person, because it is entitled to a share of the penalty or forfeiture that may be recovered therein. But the rule of law is, and the practice always has been, that a qui tam action is the action of the party who brings it, and the sovereign, however much concerned in the result of it, has no right to interfere with the conduct of it, except as specially provided by statute.

As has been shown this is a qui tam action. The statute authorizing it imposes no restraint upon the power of the party bringing it, except that he shall bring it in the name of the United States and shall not dismiss it without the consent of its district attorney and the judge. Subject to these qualifications he may proceed as if the action was in name as well as fact his own, which certainly implies the right to select and employ counsel to commence and conduct it.

The complaint being subscribed by attorneys of this court as attorneys for the plaintiff, the presumption is that they were employed by the person who brings this suit to conduct it. This being so, such attorneys are the attorneys of the plaintiff, and the complaint is duly subscribed by the attorney of the party plaintiff within the requirement of section 79 of the Oregon Civil Code, and is therefore not liable to be stricken out. When the statute authorized Dowell to bring and conduct this action in the name of the United States it necessarily authorized him to employ attorneys for that purpose, and thereupon the persons so employed became and are the attorneys of the United States for that purpose. The motion to discharge the defendant from the arrest, or, more properly, to vacate the writ of arrest (see Civ. Code Or. § 128), is based upon the assumption that by virtue of sections 914 and 915—particularly the latter—the law of the state (section 107, Civ. Code) regulates and controls the allowance and issuing of a writ of arrest, and therefore the writ in this case was improperly issued, because there was no prior undertaking or affidavit as provided in said section 107.

As to the affidavit, the complaint contains all the facts necessary to authorize an arrest, and it is verified by the oath of Dowell. Such a complaint is an affidavit, and may be used in the case whenever an affidavit as to such facts is required. In U. S. v. Walsh [Case No. 16,635], which was an action upon a statute for a penalty, this court held: "Where the cause of action is sufficiently set forth in the complaint, and the cause of ac-

tion and arrest are identical, there is no necessity for an additional or separate affidavit to authorize an arrest." Here the cause of action and arrest are identical, and the verified complaint, as to the facts stated therein, is an affidavit. Neff v. Pennoyer [Id. 10,083].

Before proceeding to consider the objection as to the undertaking, it is proper to state that section 915, supra, upon which counsel for the motion seems to rely, does not appear to apply to the case of an arrest. Briefly, it provides that plaintiffs in the United States courts shall be entitled to the remedies by "attachment or other process, against the property of the defendant," allowed by the laws of the state for the courts thereof, such plaintiff first furnishing the preliminary affidavits or proofs and security required by such state laws. As will be seen, the operation of this section is confined to the remedy by attachment or other process—probably like process—only against the property of the defendant, and not against his person.

Section 914, supra, requires in effect, that the mode of proceeding in this action "shall conform as near as may be" to the mode of proceeding in like cases in the state courts. This is a general direction, and only intended to secure uniformity in the practice in the national and state courts, in civil actions at law, as far as practicable. Indianapolis & St. L. R. Co. v. Horst, 93 U. S. 300. But when congress has specially prescribed the mode of proceeding it does not apply. Now section 3492, having specially provided that the defendant in this action might be arrested, and held to bail by the district judge, without requiring the plaintiff, or any one for it, to give any undertaking or security for costs or damages, the most reasonable inference is that it was not intended that any should be given. Besides, it is a settled rule of construction, that the general words of a statute do not include the government or affect its rights, unless such purpose be clear and indisputable upon the face of the act. Jones v. U. S., 1 Nott & Hunt. [1 Ct. Cl.] 383; U. S. v. Weise [Case No. 16,659]; Brightly, Fed. Dig. 843. This was a well established rule of the common law, founded upon considerations of public policy, and, therefore, it was said, that an act of parliament did not bind the king, unless particularly named therein. 1 Bl. Comm. 185. Under this rule, a statute of the state requiring a plaintiff to give an undertaking for costs and damages before procuring an arrest, does not include the United States.

The motions are denied.

[NOTE. Subsequently, upon an amended complaint, the plaintiff recovered judgment for $35,-228 and costs. Case unreported. This judgment was reversed in error by the circuit court, and a new trial granted. Case unreported. On the second trial the plaintiff had judgment for the same amount as on the first. Case unreported. For the subsequent history of the case, and the efforts of the plaintiff to enforce his judgment, see 8 Fed. 496, 30 Fed. 604, 762.]