POLLOCK *v.* STEAM-BOAT LAURA, etc.

*(District Court, S. D. New York.   December, 1880.)*

1. PENALTY FOR CARRYING EXCESS OF PASSENGERS—REV. ST. 4465—REMISSION—REV. ST. 5294—INFORMERS—PRACTICE—THIRTY-FIRST ADMIRALTY RULE—U. S. CONSTITUTION—FIFTH AMENDMENT—PERMISSION NOT IN WRITING—REV. ST. 4466.

The power conferred on the secretary of the treasury by Rev. St. § 5294, to mitigate or remit penalties incurred under Rev. St. 4465, relating to steam-vessels, for carrying a greater number of passengers than the certificate of inspection permits, is not a power to pardon. It is a condition annexed to the grant of the penalty, and the statute must be construed not with reference to the limitations on the pardoning power, but with reference to the principle of public policy which led to the enactment of the statute.

His power to remit or mitigate penalties extends as well to those given to the person suing for the same as to those given to the United States, or partly to the United States and partly to the informer, and can in all cases be exercised after as well as before suit brought, provided the informer's claim has not been actually determined by the court.

The term "informer," as used in Rev. St. § 5294, includes the

plaintiff in a popular action, or a person suing for a penalty given by statute to any person suing for the same.

Where a libel was filed against the steam-boat L. to recover penalties under Rev. St. § 4465, and the claimant,—a corporation,—as owner of the boat, defended and filed an answer, which neither admitted nor denied the allegations of the libel as to the number of passengers taken on board in excess of the number allowed in the certificate of inspection, but left the libellant to prove his allegation in that behalf, giving as a reason for not answering further that its answer might subject the claimant to a forfeiture or penalty:

*Held,* on exception to this part of the answer, that admiralty rule 31 applied to such a case, and protected the defendant from answering further; that that rule is to be interpreted as carrying into effect the fifth amendment to the constitution of the United States, which forbids that "any person shall be compelled in a criminal case to give evidence against himself," and the corresponding rule of the common law, which forbids the compulsory admission of liability to a pecuniary forfeiture or penalty.

That a corporation is protected under the rule equally with a natural person, and that the rule applies as well to admissions that may involve a liability for a penalty in the case in which the answer is made, as to admissions that may be used in another case or prosecution against the party answering.

Where the claimant pleaded, in his answer to a libel filed under the Rev. St. § 4465 an oral permission to carry additional passengers on excursions, under Rev. St. § 4466, which requires that the permission should be in writing:

*Held,* that this defence could not avail the claimant, and that part of the answer must be stricken out upon exception as immaterial.

In Admiralty.

*Henry G. Atwater,* for libellant.

*D. McMahon,* for claimant.

CHOATE, D. J.   This is a libel to recover penalties under Rev. St. § 4465, for carrying a greater number of passengers than the certificate of inspection permitted.   By Rev. St. § 4469, penalties so incurred are made a lien on the vessel. After the filing of the libel the claimants, who are owners of the steam-boat, applied to the secretary of the treasury for a remission of the penalty, and after they had served their answer a warrant of remission was issued, wherein the secretary, by the authority given him by Rev. St. 5294, remits to the petitioners, claimants herein, "all the right, claim, and demand of the United States, and of all others whatsoever, to the forfeiture of passage money and penalties, on payment of

costs, if any there be." On the warrant of remission the claimant now moves for a perpetual stay of the libellant's suit, or for other relief. On the libellant's behalf it is objected that the warrant of remission is void for want of power in the secretary to grant it. The section under which the warrant was issued (Rev. St. § 5294) is as follows: "The secretary of the treasury may, on application therefor, remit or mitigate any fine or penalty provided for in laws relating to steam-vessels, or discontinue any prosecution to recover penalties denounced in such laws, excepting the penalty of imprisonment or removal from office, upon such terms as he, in his discretion shall think proper; and all rights granted to informers by such laws shall be held subject to the secretary's power of remission, except in cases where the claims of any informer to the share of any penalty shall have been determined by a court of competent jurisdiction prior to the application for the remission of the penalty; and the secretary shall have authority to ascertain the facts, upon all such applications, in such manner and under such regulations as he may deem proper." This section is a re-enactment, without any substantial change, of St. 1871, *c.* 100, § 64, (16 St. 458,) and the laws relating to steam-vessels here referred to are, or at least include, the provisions of title 52 of the Revised Statutes, entitled "Regulation of steam-vessels," §§ 4399 to 4500, which are substantially a re-enactment of the statute of 1871 above referred to.

It is argued that the power to remit or mitigate fines and penalties here given to the secretary does not, upon a proper construction of section 5294, extend to the remission of a penalty given by the laws referred to, to any person suing for the same, after a suit therefor has been commenced; that this power of remission, after suit brought, does not apply at all to the case of a penalty in which the United States is not interested, which is the present case; and that the subsequent words in the statute clearly thus restrict the power of remission granted to the secretary. The argument is that the power to remit fines and penalties is a branch of the pardoning power, and that a statute conferring such power

of remission should be construed with reference to the law
governing the extent and limitations of the power to pardon;
that by the settled law of England and of this country the
pardoning power cannot be so exercised as to take away or
impair a vested private right or interest; that after suit
brought in a popular action—that is, a suit for a penalty given
by statute to any person suing for the same—the plaintiff ac-
quires such a vested right or interest in the penalty that it
cannot be impaired or taken away by a pardon; that what
was before by the statute the right of everybody, has become
the plaintiff's by his appropriating the same in the mode
prescribed by law by the bringing of his action; that this
gives him such an interest in the penalty that no pardon
could divest him of that interest.

The general proposition that the power to pardon is sub-
ject to such a limitation as is thus contended for is well sup-
ported by the authorities. *Howell* v. *James*, 2 Str. 1272;
*Coke*, 3 Inst. 236, 237, 238; *U. S.* v. *Harris*, 1 Abb. U.
S. 110; *U. S.* v. *Lancaster*, 4 Wash. C. C. 66; *Shoop* v. *The
Commonwealth*, 3 Pa. St. 126; *Rowe* v. *The State*, 2 Bay (S.
C.) 565. Nor does our law of pardons differ from the Eng-
lish. *Ex parte Wells*, 18 How. 307. It seems, also, that the
bringing of an action for a penalty given by statute to any
person suing for the same creates an interest which a pardon
cannot take away. *Coke*, 3 Inst. 237. But the question here
is one of the construction of the statute. Whatever power
of remission in the secretary congress chooses to annex, as
a condition to the grant of the penalties given, is not a power
to pardon, but is simply a restriction, limitation, or condition
annexed to the grant of the penalty. 4 Wash. C. C. 67. If
this were a statute conferring the power to pardon offences
against the United States, it must, of course, be construed
with reference to all those limitations and restrictions which
attach to the power to pardon. The power to pardon ap-
pears to be vested by the constitution in the president alone.
Article 2, § 2. But this statute, not being a statute regulat-
ing the exercise of the power to pardon, must be construed,
not with reference to the restrictions on the power to pardon,

but in all points doubtful or obscure with reference to the principle of public policy which dictated its enactment, so far as that principle may be discovered from the law itself, and the purposes aimed to be accomplished by it, and from other statutes *in pari materia*; and the mere fact that the words in which the powers granted are expressed would be appropriate in a statute granting a power to pardon, if such a statute were possible, is no reason for applying to them the strict limitations to which they would be liable in such a statute, unless such limitations are also called for by the principle of public policy intended to be subserved by the enactment, or are necessary for the purpose of giving it a fair and reasonable application to the subject-matter legislated upon. Applying this rule to the reading of this statute, I think it is clear that the power to remit or mitigate penalties extends as well and as fully to penalties given to the person suing for the same as to those given to the United States, or one-half to the government and one-half to the informer, all of which classes of penalties are given in title 52 of the Revised Statutes. I think there is no reason to construe the statute as giving to the secretary alternative powers, as claimed by libellant's counsel—*first*, as to cases where no suit has been instituted, only a power to remit or mitigate the penalty to be exercised before suit brought; and, *secondly*, if a suit has been instituted, a power only to discontinue the suit. The word "or" may, it is true, be used in such a sense as indicating that the power is to do one only of two things; but quite as frequently the use of the word "or" denotes that the power granted is to do either; that is to say, both of the two things mentioned. Thus, here, the reading that is called for, as well by the text of the law as by the evident purpose to be subserved by the statute, is that as to all the penalties referred to, except those which are purely punitive, as imprisonment or removal from office,—that is to say, as to all pecuniary penalties given by the statute,—the secretary has power, on ascertaining the facts, to remit or mitigate the same, and, if a suit has been commenced, to discontinue it. The additional power given to "discontinue any prosecution to recover penalties" may, per-

haps, be applicable, as argued, only to suits in which the United States is plaintiff; but the addition of this power in such cases, which is rather the means, or one means, of carrying into effect a remission, than a power to remit or mitigate, does not impair or take away the larger and more general power to remit or mitigate, which is expressly extended to all the pecuniary penalties of the statute, without exception. It seems to me to be doing violence to the meaning of the statute to infer from its terms that while the secretary can mitigate or reduce the amount of the penalty before suit brought, yet after suit brought he can do nothing but discontinue the suit; that he has not power to let it go on to judgment for the reduced penalty. Nor can any sound reason be suggested for presuming an intent of the legislature to discriminate between a case where suit has been brought in which half the penalty will go to the informer in the event of a judgment, which is undoubtedly subject to remission, even after suit brought, and a case where the whole of the penalty will go to him. The vesting of an interest in the informer by the beginning of the suit is the same in either case, and the evil intended to be guarded against by giving these powers to the secretary is the same in either case; or, if possible, the mischief is greater where the entire penalty goes to the informer. The obvious and humane purpose to be attained by this grant of power was to enable some responsible officer of the government, upon examination into the facts of the particular case, to prevent these penalties, some of which are severe, and might be ruinous from being used oppressively in cases where the violation of law was technical, unintended, accidental, or without such criminal or bad intent as to be deserving of severe punishment, and also to prevent them from being inequitably applied for the satisfaction of the cupidity of informers. The power given to ascertain the facts implies that the power is to be exercised with reference to the facts ascertained, and not arbitrarily by the secretary. The power is similar to that exercised by the same officer in case of penalties and forfeitures under the customs revenue laws, where the power to remit or mitigate is to be exercised

only where the forfeiture is incurred without wilful negligence or intent to defraud. See original law on this subject, (St. 1797, c. 13; 1 St. 596.) While this precise limitation is not imposed on him in the present class of cases, yet, no doubt, his power is to be exercised *quasi* judicially, and not as mere matter of grace, or arbitrarily, and without substantial grounds of equity and justice. It would, in my opinion, take from the statute a very important part of its beneficial operation to hold that after suit brought by an informer in one of these cases like the present, where the whole penalty is given to him, the power to remit or mitigate was gone. Probably in most cases the first knowledge which the owners of the vessel would have of a violation of the statute by the master, whether intentional on his part or not, would be the commencement of the action perhaps for an enormous penalty. Thus to give this construction to the act would in effect defeat its purpose and intent, and the language of the act itself requires no such strict or limited construction.

Great reliance is however placed by the learned counsel for the libellant upon the point made by him that the plaintiff in a popular action—that is, one who sues for a penalty given to any person suing for the same—is not properly speaking "an informer," and hence it is argued that as the statute expressly provides that the rights of an "informer" are held subject to the power of the secretary to remit or mitigate the penalty at any time before the informer's claim to a share of the penalty shall have been determined by a court of competent jurisdiction, it cannot have been intended that a plaintiff thus suing on his own behalf should hold his right to the penalty subject to the same liability to have it cut off by remission. This argument, however, proceeds upon a mistake as to the meaning of the word "informer." The plaintiff in a popular action is an "informer," as that word is understood in the law and used in the statutes of England and of this country. Thus Blackstone says, speaking of statutory penalties: "The usual application of these penalties or forfeitures is either to the party aggrieved, or else to any of the queen's subjects in general. But more usually the for-

feitures created by statute are given at large to any *common informer; or, in other words, to any such person or persons as will sue for the same;* and hence such actions are called *popular* actions because they are given to the people in general. Sometimes one part is given to the crown, to the poor, or to some public use, and the other part to the informer or prosecutor; and then the suit is called a *qui tam* action because it is brought by a person ' *qui tam pro domino rege, etc., quam pro se ipso in hac parte sequitur.*' " 3 Black. Com. 4th Eng. Ed. (Kerr) 149. In the year 1576 (18 Eliz. *c.* 5) parliament passed an act entitled "An act to redress disorders in common informers," which commences as follows: "For redressing of divers disorders in common informers, and for better execution of penal laws, be it enacted that every informer upon every penal statute shall exhibit his suit in proper person, etc., and that none shall be admitted or received to pursue against any person or persons upon any penal statute but by way of information or original action, and not otherwise." This act carefully regulates all such informations and actions, and by sections 6 and 7 suits upon penalties given to any certain person, or body politic or corporate, and suits by any officer who has been used to maintain such suit, are excepted from its operation, leaving it in fact to apply only to *popular* actions; or, as it is expressed in the statute, suits upon penalties "limited or granted generally to any person that will sue." The legislature of New York passed a very similar act for the regulation of suits on penal statutes. St. 3 Feb. 1788. It is entitled "An act to redress disorders by common informers, and to prevent malicious informations." By the tenth section its operation is restricted to suits where the penalty is by statute given to "any person suing for the same." N. Y. Laws, J. & V. 188. In his History of the English Law, 509, Crabb says, speaking of the time of Elizabeth: "Owing to the number of penal statutes which now existed, and the encouragement which they held out to needy persons to bring informations for the sake of the forfeitures, two statutes were made in this reign, namely in the eighteenth and thirty-first years of this queen, for the purpose of

regulating this troublesome description of people, and in some instances inflicting corporal punishment on such persons, if convicted of malicious or oppressive proceedings. Among other things, compounding informations on penal actions—that is, taking any money or promise from the defendant without leave of the court, by way of making a composition with him not to prosecute—subjected the offender to a penalty of £10, two hours standing in the pillory, and to be forever disabled from suing *such popular action. On the subject of these informations* it is worthy of remark that no prosecution could be brought *by any common informer* after the expiration of a year from the commission of the offence." These instances are surely sufficient to show that the plaintiff in a popular action, whether prosecuting by information or by original writ, was an informer within the well-understood meaning of that word. The word seems clearly to include such a plaintiff, also, as it is used in the act of congress of February 28, 1799, which provides in section 8 "that if any informer on a penal statute, and to whom the penalty or any part thereof, if recovered, is directed to accrue, shall discontinue his suit or prosecution, or be nonsuited," etc., he shall be liable for certain fees. 1 St. 626. In its origin the word "informer" may have meant only one who sues by way of an information; but, as is seen by the statute of 18 Elizabeth, this was not the only mode of suing for penalties, and in time, certainly, if not originally, a party so suing in whatever mode was known as an informer. The word also, no doubt, in some of its applications, includes a person who lodges information with a government officer which leads to a suit brought by the government itself. It is so used in the customs revenue laws. But that the word includes also the plaintiff in a popular action is very evident from the authorities cited above. Nor does it seem to me that the reference to the *share* of the informer in this proviso has any important bearing on this question. When the whole penalty, as in this case, goes to the informer his share is the whole. It is not a misuse of the word, even if intended to apply to this class of informers. There is no statute which has been cited, or which I have discovered, which

in any respect discriminates in favor of or for the greater protection of this class of informers. On the contrary, the statute of 18 Elizabeth and the New York act of 1788 show that this very class of informers has been regarded as the least entitled to favor, and as requiring in a greater degree than any other class stringent legal and legislative regulation. And it would be clearly a violation of that principle of public policy which governs this subject-matter to give this statute a strained construction for their benefit, or to base an inference that they were intended to be excepted out of its beneficial operation upon any expressions of intention in their favor so inconclusive as are contained in section 5294.

Taking the whole statute together, then, I think it subjects all pecuniary penalties to the secretary's power of remission, provided the informer's claim shall not have been actually determined by the court. The power was therefore rightfully exercised in this case. Where the suit is by the United States, though prosecuted partly for the benefit of the informer, the secretary has power to discontinue it. In this case the warrant of remission does not purport to order the discontinuance of the suit, and probably it is proper that it should not do so, because it is the suit of a private party; but the court is bound to give effect, in some proper way, to the remission which the secretary had the power to make. The precise question involved in this case seems to have been decided by Judge Blatchford, in the case of *The Twilight,* in December, 1875. In that case, after issue joined in a suit for a similar penalty, the secretary remitted the penalty on certain terms, "subject to the decision of the court as to whether the plaintiff is an informer under section 5294 of the Revised Statutes, and the forfeiture incurred under section 4465 of said statute is remissible by the secretary of the treasury." It appears by the record in that case that, after hearing the parties, the court made an order perpetually staying libellant's prosecution of the suit. As no opinion was filed, nor any briefs, it may be true, as claimed by the libellant's counsel, that the points made in this case for libellant were not presented to the court in that case. As the amount

claimed is large, I think it is better, in view of a probable appeal, that an order be entered giving the claimant leave to file a supplemental answer, setting up the remission as a defence to the suit.

The libellant has filed exceptions to the answer of the claimant, a corporation, which appeared and defended as owner of the steam-boat. Two causes of action are stated in the libel—*First*, taking on board on one trip 280 passengers in excess of the number allowed by the certificate; and, *secondly*, taking on board on another trip 275 in excess of that number. The answer, while admitting the allegations of the libel as to the number the vessel was allowed to carry by her certificate, neither admits nor denies the allegation as to the number taken on board in excess of that number, and leaves the libellant to prove the allegations in that behalf, insisting that the claimant is not required to answer further on the ground that its answer "might and would tend to subject it to a penalty or forfeiture." To this part of the answer the libellant excepts, and now insists that the claimant must admit or deny the fact alleged. I think the case is within the thirty-first admiralty rule, which is as follows: "The defendant may object by his answer to answer any allegation or interrogatory contained in the libel which will expose him to any prosecution or punishment for a crime, or for any penalty or any forfeiture of his property for any penal offence." It is argued that this rule is designed to protect a party against his admission of a penal offence being used against him as a party to a criminal or penal prosecution in some other suit or some other court. Possibly this was the prominent point had in view when the rule was framed, but I do not see why its terms are not equally applicable to a case where, in the very same suit, the defendant called on to answer will be subjected to the like evil consequence of admitting the fact. In reality, this rule seems to be but an application of the provision in the constitution of the United States which provides that "no person shall be compelled in a criminal case to be a witness against himself." Amend. 5. This provision applies to suits on penal statutes for a pecuniary

penalty only. *Bank of Salina* v. *Henry*, 2 Den. 155; 3 Den. 593; *Curtis* v. *Knox*, 2 Den. 341; *Burns* v. *Hempshall*, 24 Wend. 360; 4 Hill, 468; *Cloges* v. *Thayer*, 3 Den. 566; *Parkhurst* v. *Lowlen*, 1 Mer. 401.

This provision of the constitution is but an adoption as a constitutional guaranty of a principle of the common law, and as a rule of the common law it was as broad as the rule in admiralty referred to, extending to cases of a mere liability to pecuniary forfeiture. Same cases, 2 Story, Com. Const. § 1788, (4th Ed.) Another point taken in support of this exception is that the rule does not apply to a corporation, but only to a natural person. I see no valid reason for this distinction. The property of a corporation is equally under the protection of the constitution with that of a natural person. Its admission of a fact tending to criminate it would equally subject it to a judgment for a penalty or forfeiture, and thus deprive it and its stockholders of its and their property in the same manner in which the admission of a natural person would do, and that, too, in a proceeding which for this purpose is *quasi* criminal, and is within the meaning of the fifth amendment to the constitution of the United States, and certainly within the thirty-first admiralty rule. This exception is therefore overruled.

The libellant also excepts to the third article of the answer, which in brief sets up as a defence to the suit that the claimant received an oral permission to run upon excursions under Rev. St. § 4466, and to cary 500 passengers, which was more than she had on board, but that through negligence the permission was not given in writing. Rev. St. 4466 requires the permission for the extra number allowed to be in writing. Of course an unwritten permission is wholly immaterial and cannot avail as a defence. This exception is sustained.