## UNITED STATES v. STOCKING.

### (District Court, D. Montana. May 20, 1898.)

### No. 321.

1. INDIANS—REMOVAL OF PERSONS FROM INDIAN COUNTRY—PENALTY FOR RETURNING.

By the act of June 30, 1834 (4 Stat. 730, § 10), the superintendent of Indian affairs and Indian agents and subagents are empowered to remove from the Indian country any persons found therein contrary to law. By the act of August 18, 1856 (11 Stat. 80, § 2), it is provided that any person thus removed who shall return shall forfeit $1,000. *Held*, that the latter act is not an amendment, but is a supplement, to the former one.

2. SAME.

The act of June 30, 1834 (4 Stat. 730, § 10), authorizing the removal of persons from the Indian country, was supplemented August 18, 1856 (11 Stat. 80, § 2), by an act prescribing a penalty upon any person so removed who should return thereto. The act of 1834 also provided (4 Stat. 733, § 27) that all penalties provided for by the act should be collected in an action of debt at the suit of the United States, etc. *Held*, that the latter provision did not apply to the act of 1856.

3. SAME—REVISION OF STATUTES.

The act of June 30, 1834 (4 Stat. 733, § 27), provided for the collection of all penalties accruing under "this act" by an action of debt, etc. The act of August 18, 1856 (11 Stat. 80, § 2), provided a penalty for an infraction of the act of 1834. Upon revision the act of 1856 was printed under the same title with the act of 1834, as section 2148 of the Revised Statutes. The section providing for the collection of the penalty (Rev. St. § 2124) was changed to provide for the collection of penalties under "this title" instead of under "this act." By Rev. St. § 5600, it is provided that no presumption of a legislative construction shall be drawn by reason of the title under which any particular section is placed by the revision.

*Held*, that section 2124 does not limit the right of the United States to an action of debt to recover the penalty prescribed in section 2148.

4. PENALTIES—HOW COLLECTED.
When a statute creating a forfeiture does not prescribe the mode of collecting it, either debt, information, or indictment will lie.

5. SAME—CONSTRUCTION OF STATUTES.
Rev. St. § 3124, providing "that all penalties which shall accrue under this act shall be sued .for and recovered in an action of debt in the name of the United States before any court having jurisdiction of the same in any state or territory in which the defendant shall be arrested or found, one half to the use of the informer, and the other half to the use of the United States; except when the prosecution shall be first instituted on behalf of the United States, in which case the whole shall be to their use," was not intended to limit the United States to an action of debt to collect the penalties provided, but prescribed the procedure in cases where the penalty was sought to be collected by an informer.

6. INDIANS—PENALTY FOR RETURNING TO INDIAN COUNTRY AFTER REMOVAL.
Indictment will lie to recover the penalty provided by Rev. St. § 2148, for the return to the Indian country of a person removed therefrom by the superintendent of Indian affairs or Indian agent.

H. B. Rodgers, U. S. Atty.
Albert I. Loeb, for defendant.

KNOWLES, District Judge. The defendant, Charles Stocking, was indicted by a grand jury impaneled in the district court for this district of the offense of returning to the Crow Indian reservation after having been legally removed therefrom. The defendant interposed a demurrer to the indictment, and presented the question as to whether the said defendant could be prosecuted by indictment for the offense named. The claim was made that he would be liable only in a civil action in the nature of an action for debt for the penalty of $1,000, named in the law. By the act of June 30, 1834 (4 Stat. 730, § 10), it is provided:

"That the superintendent of Indian affairs and Indian agents and sub-agents shall have authority to remove from the Indian country all persons found therein contrary to law, and the president of the United States is authorized to direct the military force to be employed in such removal."

By the act approved August 18, 1856 (11 Stat. 80, § 2), it is provided:

"That if any person who has been removed from the Indian country under the provisions of the tenth section of the act of congress approved the 30th of June, eighteen hundred and thirty four, entitled 'An act to regulate trade and intercourse with the Indian tribes, and preserve peace on the frontier,' shall thereafter at any time return or be found within the Indian territory, such offender shall forfeit and pay the sum of one thousand dollars."

It is urged that this latter statute is an amendment to the former. This, I conceive, is not the case. It does not correct or change the statute of June 30, 1834. In those states where there is a constitutional provision which provides that no act shall be amended by reference to its title only, but the section altered or amended shall be enacted or published at length, it is held that a supplemental act does not fall within this provision. 23 Am. & Eng. Enc. Law, tit. "Statutes," 281. This latter statute must be called a "supplemental act."

In the said act of June 30, 1834, this section is found (section 27, 4 Stat. 733):

"That all penalties which shall accrue under this act shall be sued for and recovered in an action of debt in the name of the United States before any court having jurisdiction of the same in any state or territory in which the defendant shall be arrested or found, one half to the use of the informer, and the other half to the use of the United States; except where the prosecution shall be first instituted on behalf of the United States, in which case the whole shall be to their use."

It will be observed that the reference in this section is to the act of which it forms a part. The section may be termed a "penal statute," and should be strictly construed.

Endlich on Interpretation of Statutes (page 42), when considering the rules pertaining to the construing of two statutes as one, says:

"But this rule does not extend to penal statutes, the construction of which, upon a principle which will be hereafter discussed, is to be confined to the more literal meaning of the language. Hence in such acts the term 'this act' bears its literal significance, and refers only to the act itself in which it occurs, though the act is made part of another, and to be construed with it."

It must be conceded that, under this rule of construction, section 27 of said act of June 30, 1834, did not apply to the one of August 18, 1856. In the revision of United States statutes, this act of 1856 was incorporated into the Revised Statutes, as section 2148. There was some change in the language of the statute, but none, I think, which would change its legal construction. The said section 27 of the act of June 30, 1834, was by said revision incorporated into the Revised Statutes, as section 2124. This section was changed so as to read "this title" instead of "this act," and the suit for the penalty was to be an action in the nature of an action for debt.

It is contended that, since the incorporation of these sections under one title in the Revised Statutes, the said section 2124 does apply to section 2148, and establishes the remedy, and the only remedy, for the recovery of the penalty in the last-named section. Section 5600 of the Revised Statutes provides:

"The arrangement and classification of the several sections of the revision have been made for the purpose of a more convenient and orderly arrangement of the same, and therefore no reference or presumption of a legislative construction is to be drawn by reason of the title under which any particular section is placed."

It will be observed that the claim that the mode of collecting the penalty named in said section 2148 as in the said section 2124 provided is mainly supported because the first-named section is found arranged under the head of title 28, Rev. St., and because the term "this act" has been changed to "this title."

In considering the effect of the revision of the United States statutes, the supreme court, in McDonald v. Hovey, 110 U. S. 619, 629, 4 Sup. Ct. 142, 146, said:

"So, upon a revision of statutes, a different interpretation is not to be given to them without some substantial change of phraseology, some change other than what may have been necessary to abbreviate the form of the laws."

In support of this view, the court quotes the following from the case of Taylor v. Delancy, 2 Caines, Cas. 143:

"When the law, antecedently to the revision, was settled either by clear expressions in the statute or adjudications on them, the mere change of phraseology shall not be deemed or construed a change of the law, unless

such phraseology evidently purports an intention of the legislature to work a change. * * * The construction will not be changed by such alterations as are merely designed to render the provisions more precise."

This view is also sustained in U. S. v. Ryder, 110 U. S. 729, 740, 4 Sup. Ct. 196, 201, and the following language used:

"It will not be inferred that the legislature, in revising and consolidating the laws, intended to change their policy unless such intention be clearly expressed."

It must appear from what was said heretofore that by no proper construction could section 27 of the said act of June 30, 1834, have controlled or modified the said act of August 18, 1856, until the Revised Statutes went into effect, December 1, 1873. Up to that date the United States was not limited in the remedy it could resort to in collecting the penalty or forfeiture named therein.

In the case of Adams v. Woods, 2 Cranch, 336, Marshall, C. J., said:

"Almost every fine or forfeiture under a penal statute may be recovered by an action of debt, as well as by information."

Again: "In this particular case the statute which creates the forfeiture does not prescribe the mode of demanding it. Consequently, either debt or information would lie."

The statute of August 18, 1856, did not provide in what manner the forfeiture therein named should be demanded. It might be collected in an action in the nature of an action of debt or information: Where an information could be filed, indictment would lie. Before the revision of the statutes, and up to the present time, I feel confident that the offense named in said act of August 18, 1856, was prosecuted in courts of this district having jurisdiction of the offense by indictment. It would appear that such was the practice in the district at least of Oregon. It has not been the opinion of such courts that the change of the term "this act" to that of "this title" was intended to change the policy of the United States in regard to this offense. To those acquainted with the facts, it is evident that the suit for debt would be a very inadequate remedy in protecting Indian reservations from unlawful intruders. I am still of the opinion that this change does not clearly show that the law was changed. Much of the trouble in regard to this section 2124, I think, has been occasioned by a lack of a careful examination of its language, and a correct interpretation of its meaning. It is provided in the first clause of this section that all penalties which shall accrue under the provisions of this title shall be sued for and recovered in an action in the nature of an action of debt in the name of the United States. For what reason was it necessary to provide that the action should be in the name of the United States? If the suit was instituted by the United States, in what other name could it be brought? This suit in the name of the United States is to be prosecuted for the benefit of the informer to the extent of one half of the penalty; the other half to the use of the United States. The second clause in this section is: "Except when the prosecution shall be first instituted on behalf of the United States, in which case the whole shall be to their use." The action referred to in the first clause of this section does not refer, then, to an action commenced by the United States or on

its behalf. If the action is prosecuted for the benefit of the United States, the informer receives no part of the penalty. This leads to the inquiry as to what was the true import of the language used in that part of said section.

At common law, suits for penalties were often prosecuted by informers. Some of these were called "common informers." Bl. Comm. bk. 3 (Cooley's Ed.) 160; Pollock v. The Laura, 5 Fed. 133. These informers were empowered to bring actions for penalties established by law in their own names, and, if part of the amount to be recovered was for the benefit of the king, the action was called a "qui tam action." 18 Am. & Eng. Enc. Law, 276, note 1.

In U. S. v. Griswold, 5 Sawy. 25, Fed. Cas. No. 15,266, it was held:

"When, as in this case, a statute imposed a penalty for the commission of an act, and also gave such penalty in part to whoever would sue for it, and the remainder to the king or other public use, the action to recover such penalty, if brought by a private person, was brought in his own name, and subject to his control."

The case of Adams v. Woods, 2 Cranch, 336, above cited, was a qui tam action brought in the name of what would be termed an "informer." The statutes of the United States recognize informers and their right to institute suits. Section 975, Rev. St., provided:

"If any informer or plaintiff on a penal statute to whom the penalty or any thereof if recovered is directed to accrue discontinues his suit or prosecution, or is nonsuited therein, or if upon trial judgment is rendered in favor of the defendant, the court shall award the defendant his costs," etc.

It would appear as if in this statute the right of an informer to sue in his own name for a penalty was recognized. The suit is called his suit.

Section 976, Rev. St., provides that:

"If any informer in a penal suit * * * discontinues his suit or prosecution. * * * he alone shall be liable to the clerk, marshal and attorney for the fees of such prosecution unless certain named contingencies are presented."

There are authorities, however, which maintain that, unless authorized by statute, an informer cannot sue in his own name for a penalty. 18 Am. & Eng. Enc. Law, 276, 277. The provision, therefore, of section 2124, that the suit shall be in the name of the United States, was intended to settle this dispute. Upon the examination of title 28, I find no express provision that an informer would be entitled to any portion of the penalties named therein. Under the provisions of said section 2124, an informer is entitled to one-half of the penalty sued for, unless the action is first prosecuted by the United States. Any words of a statute which show that a part of the penalty named therein shall be for the use of an informer will entitle him to maintain an action therefor if he complies with the conditions of the statute. 18 Am. & Eng. Enc. Law, 276, and notes 1 and 2. While there is no express provision of the Revised Statutes which has come under my observation which gives an informer any part of the penalties named in title No. 28, Rev. St., yet I think the provisions of section 2124 impliedly give him one-half of the said penalties. If he has this right, then this section gives him, in my judgment, the right to sue therefor in the name of the United

States. It was a rule of the common law, if the king first instituted suit for a penalty, the whole penalty recovered would be for his use. Bl. Comm. bk. 3 (Cooley's·Ed.) 160. If an informer is given no rights under and by virtue of said section 2124, it is difficult to discover its meaning. Considering the above propositions, I think I am able to interpret that section. The first clause refers to an action by an informer, and should read:

"All penalties which shall accrue under this title shall be sued for and recovered by any informer in the name of the United States in an action in ·the nature of an action óf debt before any court having jurisdiction of the same in any state or territory in which the defendant shall be arrested or found, the one half to the use of the informer, and the other half to the use of the United States."

This should be considered the informer's suit, and he would be subject to the provisions of sections 975, 976, Rev. St. This construction of said section would bring it into accord with the rules of the common law. The last clause would show that it was the intention of congress to recognize the common-law rule that, when the prosecution is instituted by the government, the penalty recovered shall be for the benefit of the government, and not for that of the informer. The general rule has been that, when the United States seeks to enforce a penalty, it is not limited to any one remedy. This was the view entertained by Judge Deady in the case of U. S. v. Howard, 17 Fed. 638. In order to justify a court in holding that congress has by any act narrowed the rights of the United States in any particular as to any remedy, that intention ought to clearly appear. The cases of U. S. v. Payne, 22 Fed. 426, and In re Seagraves (Okl.) 48 Pac. 272, are based upon the view that section 2124 applies alone to an action by the United States, and does not establish the rights and remedy of an informer, and that the United States alone can maintain the action named therein. I do not believe a correct interpretation of that section will support this view. The first clause of that section evidently refers to what is termed a "qui tam action," and the government does not maintain qui tam actions. McNair v. People, 89 Ill. 444, 445. ·

If the claim that section 2148 is brought within the provisions of section 2124 is maintained, the only effect would be that an informer would be entitled to one-half the penalty named therein if he maintained his suit therefor. At one time informers ·performed an important part in the collecting of the penalties provided in penal statutes, but, even at the time of the revision of the United States statutes, they rarely appeared in such cases, and have now about disappeared in penal litigation. Practically, then, the change claimed in the law would amount to but little. For the reasons above, the demurrer in this case is overruled, and the defendant directed to plead.