THE BEN R.

(Circuit Court of Appeals, Sixth Circuit. December 15, 1904.)

No. 1,314.

1. ADMIRALTY—SUIT TO ENFORCE STATUTORY PENALTY—APPEAL.

A proceeding in rem by the United States against a vessel, under Rev. St. § 4499 [U. S. Comp. St. 1901, p. 3060], for the enforcement of a penalty for violation of a statutory provision, is one in admiralty, and not a criminal proceeding, and a decree dismissing the libel is appealable.

2. STATUTES—CONSTRUCTION—PENAL ACTS.

To extend a penal statute to a case not specifically described, the intention of the Legislature must be ascertained from the words of the act, and not made out by conjecture as to the purpose of the lawmaker or based upon probabilities.

3. SHIPPING—PENALTY FOR VIOLATION OF NAVIGATION STATUTE—GASOLINE VESSELS.

Act Jan. 18, 1897, c. 61, 29 Stat. 489 [U. S. Comp. St. 1901, p. 3029], which makes all vessels of above 15 tons burden carrying freight or passengers for hire, propelled by gas, fluid, naphtha, or electric motors, subject to the provisions of certain enumerated sections of the Revised Statutes relating to river navigation, and to inspection and employment of engineers and pilots by steam vessels, the latter provisions being found in title 52 [U. S. Comp. St. 1901, p. 3014], does not have the effect of extending to such vessels the provisions of section 4499 [U. S. Comp. St. 1901, p. 3060], imposing penalties upon "any vessel propelled in whole or in part by steam" which shall be navigated without complying with the terms of such title, and such a vessel is not subject to seizure and forfeiture thereunder.

Appeal from the District Court of the United States for the Western District of Kentucky.

This is an appeal in admiralty from a decree of the district court dismissing a libel sued out by the United States against the Gasoline Boat Ben R., its tackle, furniture, etc.

The proceeding was brought for the purpose of enforcing against the boat two penalties, of $500 each, alleged to have been incurred for navigating without inspection and without a licensed engineer.

The appellee, Frank T. Rounds, as claimant obtained the release of the boat upon entering into bond in double the amount claimed. The penalties are claimed under the act of January 18, 1897, c. 61, 29 Stat. 489 [U. S. Comp. St. 1901, p. 3029], which reads as follows: "That all vessels of above fifteen tons burden, carrying freight or passengers for hire, propelled by gas, fluid, naphtha, or electric motors, shall be, and are hereby, made subject to all the provisions of section forty-four hundred and twenty-six of the Revised Statutes of the United States, relating to the inspection of hulls and boilers and requiring engineers and pilots; and all vessels so propelled, without regard to tonnage, or use, shall be subject to the provisions of section forty-four hundred and twelve of the Revised Statutes of the United States, relating to the regulation of steam vessels in passing each other; and to so much of sections forty-two hundred and thirty-three and forty-two hundred and thirty-four of the Revised Statutes, relating to lights, fog signals, steering, and sailing rules, as the board of supervising inspectors shall, by their regulations, deem applicable and practicable for their safe navigation."

The provisions of section 4426 are as follows: "The hull and boilers of every ferry-boat, canal-boat, yacht or other small craft of like character, propelled by steam, shall be inspected under the provisions of this title. Such other provisions of law for the better security of life, as may be applicable to such vessels, shall by the regulations of the board of supervising inspectors, also be required to be complied with, before a certificate of inspection shall

be granted; and no such vessel shall be navigated without a licensed engineer and a licensed pilot. Provided, however, that in open steam-launches of ten tons burden and under, one person, if duly qualified, may serve in the double capacity of pilot and engineer."

Sections 4412, 4233, and 4244 [U. S. Comp. St. 1901, pp. 3020, 2893, 2906] relate solely to the duties of vessels passing each other, and to the subject of lights, fog whistles, and sailing rules, and have no direct bearing upon the question as to penalties imposed for noninspection or navigation without licensed engineer.

R. D. Hill, U. S. Atty., and M. H. Thatcher, Asst. U. S. Atty.
W. T. Ellis, R. W. Slack, and L. P. Little, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge (after making the foregoing statement). The motion to dismiss the appeal must be denied. It is based upon the notion that a libel to enforce a penalty is a criminal proceeding, and that, therefore, no appeal in behalf of the United States will lie from a decree dismissing the libel.

But this is not a criminal case, but a proceeding in rem against the gasoline steamer Ben R. It is prosecuted under section 4499 [U. S. Comp. St. 1901, p. 3060], which provides that "the vessel" navigated contrary to its provisions "shall be liable" for the penalties named, "and may be seized and proceeded against by way of libel," etc.

An appeal lies from any final decree in admiralty, whether the proceeding is one to enforce a forfeiture or a penalty by the United States or by an informer in his own name. Some examples are: The Palmyra, 12 Wheat. 1, 14, 6 L. Ed. 531; The Haytian Republic, 154 U. S. 118, 14 Sup. Ct. 992, 38 L. Ed. 930; The Three Friends, 166 U. S. 1, 50, 51, 17 Sup. Ct. 495, 41 L. Ed. 897.

While the effect of the act of January 18, 1897, c. 61, 29 Stat. 489 [U. S. Comp. St. 1901, p. 3029], is to subject vessels of above 15 tons burden, propelled by "gas, naphtha or electric motors," to the provisions of section 4426, in respect of inspection and navigation by licensed engineers and pilots, the act provides no penalty for noncompliance, and none is provided by that section or either of the other sections of the Revised Statutes, which are specifically referred to in the act itself.

The insistence of the counsel for the United States is that section 4499 has application, and this proceeding is based alone upon that provision of the Revised Statutes. That section is in these words:

"If any vessel propelled in whole or in part by steam be navigated without complying with the terms of this title, the owner shall be liable to the United States in a penalty of five hundred dollars for each offense, one-half for the use of the informer, for which sum the vessel so navigated shall be liable, and may be seized and proceeded against by way of libel in any district court of the United States having jurisdiction of the offense."

But it will be observed that that section refers alone to "steam" vessels, and it must be conceded that unless it has been amended so as to include vessels propelled by gasoline it does not apply to the Ben R, which is not propelled by steam, but by gasoline alone.

134 F.—50

That the act of January 18, 1897, does not, in terms, refer to section 4499 by providing that vessels propelled by naphtha, etc., shall be subject to its provisions, and that it does specifically provide that such vessels shall be subject to certain other sections specifically enumerated, is the most pregnant fact involved in the matter of the applicability of that section to the class of boats regulated by the act. Notwithstanding the failure of Congress to mention the particular section as one to which such vessels should be amenable, is it otherwise so evident that it intended to subject them to the penalties of that provision of the old law as to authorize us to say that that section extends to and includes vessels not propelled by steam?

But upon what authority shall we do thus? It is most apparent that the section is omitted from those specifically mentioned as extended to such vessels. The natural presumption would be that the omission under such circumstances was not through oversight or inadvertence, but because it was not the purpose of the Legislature to subject such small vessels as were likely to be propelled by gasoline or naphtha or an electric motor to the severe penalties denounced against the great vessels using steam. Neither are we pointed to any word or phrase in the act of 1897 which is so ambiguous as to enable us to say that such ambiguous phrase, properly read, extends section 4499 to such vessels.

But it is said that if the penalties of that section do not apply there are no penalties for the enforcement of the provisions of law made applicable by the act of 1897 to such small craft. But this is a penal statute, and such statutes are not to be extended beyond their plain meaning by either implication or construction. If a case is not within the letter of such a statute, it cannot be brought within it because supposed to be within the reason or policy of the law. It may be quite improbable that the Legislature purposely omitted all penalties for the enforcement of the provisions for the first time made applicable to such craft, and it may be also probable that Congress intended that the penalties applicable to steam craft should be likewise made applicable to gasoline craft. But it was long ago observed by Chief Justice Marshall, when asked to extend a criminal statute to places not enumerated in the act because it was improbable that Congress intended to make the differences with respect to place which the words of the law imported, that "probability is not a guide which a court, in construing a penal statute, can safely take." Such an argument, when based not upon an ambiguity of language, but upon the mere fact that the cases enumerated in the statute are kindred to a case not so enumerated but within the mischief intended to be remedied, is an appeal to legislative rather than judicial power. To extend a penal statute to a case not specifically described, the intention of the Legislature must be ascertained from the words of the act, and not made out by conjecture as to the purpose of the lawmaker or based upon probabilities.

The rule of construction for such statutes as that before us is well defined by the Supreme Court in United States v. Wiltberger, 5 Wheat. 76, 95, 5 L. Ed. 37, where it was said by Marshall, C. J.:

"The intention of the Legislature is to be collected from the words they employ. When there is no ambiguity in the words there is no reason for construction. The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle that that which is within the reason or mischief of a statute is within its provisions so far as to punish a crime not enumerated in the statute because it is of equal atrocity or of kindred character with those which are enumerated."

This language has been approved and applied in many cases. Among them are Sarlls v. United States, 152 U. S. 570, 575, 14 Sup. Ct. 720, 38 L. Ed. 556; U. S. v. Harris, 177 U. S. 305, 310, 20 Sup. Ct. 609, 44 L. Ed. 780; United States v. Stocking (D. C.) 87 Fed. 857. It has also the support of the text-books. Endlich, Interpretation of Statutes, § 329; Sutherland State Construction, § 350.

If we treat section 4426 as amended so as to include both steam and gasoline vessels within its terms, what is the penalty for its nonobservance? Section 4499 answers this, if the vessel be one propelled by steam. But if it be propelled by some other power, what then? Section 4499 is included within title 52. That title embraces 101 sections. Quite a number of penalties are prescribed by various sections which apply to certain specific requirements. Some of these penalties are enforceable against the vessel as liens, and others are penalties enforceable against the owners only, or against officers of the law, or agents of the owners by proceedings in personam. The last two sections cover cases where no specific penalty has been elsewhere prescribed. The first of these sections is 4499, and covers the case of vessels propelled by steam "navigated without complying with the terms of this title."

The next section, No. 4500 [U. S. Comp. St. 1901, p. 3060], reads as follows:

"The penalty for the violation of any provision of this title, not otherwise especially provided for, shall be a fine of five hundred dollars, recoverable one-half for the use of the informer."

Now, if one or the other of these two sections is to be held applicable because the probabilities are that Congress so intended, the balance of probabilities would seem to favor 4499 as the applicable section. But there is no word in the act of January 18, 1897, which will authorize us to say that that word or that phrase, properly interpreted, operates to amend section 4499 so as to include gasoline vessels. It may be that the intention of Congress was to subject vessels so propelled to the penal effect of section 4500. If so, this libel would not lie, for the penalty then denounced is enforceable only as a fine.

But we conceive that the rule in respect of the construction of penal statutes does not justify the extension of such a statute to a subject not embraced by words simply upon the doctrine that the case omitted is within the spirit or policy of the law. If it is not within its letter, it is not applicable.

This view of the case makes it unnecessary and improper for us to express any opinion with respect to the other questions which

have been argued, and which could only become relevant in the event of the applicability of section 4499 to the case made by the libel.

For the reasons herein stated, the decree dismissing the libel is affirmed.

NOTE.—The following is the opinion of the District Court by EVANS, District Judge:

"The libel in this case seeks to condemn the gasoline boat Ben R upon the ground that it is a vessel of more than 15 tons burden, and that it was navigated on the Ohio river and engaged in carrying passengers and freight for hire without having thereon in charge of its engines and machinery a duly licensed engineer. The court has not only heard the testimony, but (what is not very material) has gone, in company with the district attorney, upon the boat itself, to see if that would aid in a better understanding of the testimony. It may also aid in better understanding what is about to be said to insert the following accurate picture of the boat:

"After a very careful consideration of the case as developed at the trial the court has reached the following conclusions upon the facts, namely:

"1. That the structure called an inclosed space, which appears upon the top of the boat, and extends above the surface of the upper deck, is rather a cover for an opening in that deck than anything else, and is something which in no way adds to the carrying capacity or tons burden of the vessel. It is a mere canopy or extension upward of the top of the boat above the level of the upper deck, and its sides consist mainly of glass or open space. It is a covering for the opening in the deck, and is useful for light and air; but is obviously unavailable for anything else, as much so as if it were a mere awning. If anything, this structure rather diminishes the boat's carrying capacity for such passengers or freight as might otherwise go upon the upper deck, and, as intimated, adds nothing to the real capacity of what might be called the cabin or hold of the boat. In short, the so-called closed-in space on the upper deck is not such a permanently closed-in space as is available for cargo, stores, passengers, or crew, any more than would be the more elevated part of the top of an ordinary street-car, which it somewhat resembles. If not so available, it should not be included in the estimate of tonnage.

"2. That by no proper test can the boat be found to have a greater burden than 15 tons. Any proper admeasurement would, in my judgment, exclude therefrom the so-called inclosed space above described for the reason indicated, viz., that it is not available for putting into it either cargo, stores, passengers, or crew.

"Unless the boat is of more than 15 tons burden there is no statutory requirement that a licensed engineer shall be put in charge of its engine.

Whether the law is wise in placing the limit at 15 tons burden is a question for Congress and not for the court.

"Though I shall not go into the authorities nor the learning in the case, nor attempt to state in detail any rules which ought to control in the determination of the questions involved or those which should control in the admeasurement of the boat, it may not be amiss to refer to the article on 'Tonnage' in the Encyclopedia Britannica and the rules laid down by Moorsom.

"Having reached the conclusions of fact which have been stated, it results that the libel must be dismissed, and a judgment accordingly may be prepared and submitted."