## THE MESSENGER.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1909.)

### No. 1,444.

SHIPPING (§ 10*)—REGULATION OF GASOLINE VESSELS—COMPUTATION OF TONNAGE.

The superstructure of an inclosed cabin on a gasoline boat, which cabin extends from the bottom of the boat above the deck having windows in the superstructure, but which adds nothing to the carrying capacity of the boat in either passengers or cargo, is not a "closed-in space * * * available for cargo or stores or for the berthing or accommodation of passengers or crew," which under Rev. St. § 4153 (U. S. Comp. St. 1901, p. 2812) is to be added to the space below deck in computing the vessel's tonnage, and where without it the boat is not over 15 tons burden, she is not subject to inspection, etc., under the provisions of Rev. St. § 4426 (U. S. Comp. St. 1901, p. 3029).

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 24; Dec. Dig. § 10.*]

Appeal from the District Court of the United States for the District of Indiana.

That the facts hereinafter stated might be the more readily understood, the following picture of the boat involved in this case was put into the record:

R. W. Slack, for appellant.

M. H. Thatcher, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge. The action in the court below was a libel of information, under section 4426, tit. 52, c. 1, Rev. St. U. S. (U. S. Comp. St. 1901, p. 3029), by the District Attorney for the District

of Indiana, against a gasoline boat known as the Messenger, her boats, tackle, apparel and furniture, and against all persons intervening therein, to have assessed against said boat certain statutory penalties for violation of the United States statutes requiring boats over fifteen tons burden to be inspected, and to carry inspection papers. The Messenger was alleged in the libel to be engaged in navigating a waterway of the United States, the Ohio River, between the states of Indiana and Kentucky, carrying freight and passengers for hire.

The chief defense is that the boat was not one of over fifteen tons burden. But on the question thus raised there is no dispute of fact; for both the witnesses for the government and the witnesses for the defense put the measurement of the boat below the level of the tonnage deck (that is to say exclusive of the cubic quantities of the so-called superstructure above that level) at fifteen tons; and in the calculation of the witnesses both for the government and for the defense, if the so-called superstructure above the tonnage deck is to be included, the boat is above fifteen tons burden. The whole case, therefore, turns upon the question whether, in the calculation under the statute, anything is to be added to the tonnage below the level of the tonnage deck on account of the cubic quantity of the so-called superstructure above the tonnage deck level.

The law provides (section 4153, Rev. St. U. S. [U. S. Comp. St. 1901, p. 2812]) that if there be "a break, a poop or any other permanent closed in space on the upper deck available for cargoes or stores, or for the berthing or accommodation of passengers or crew, the tonnage of that space shall be ascertained and added to the gross tonnage: providing that nothing shall be added to the gross tonnage for any sheltered space above the upper deck which is under cover, and open to the weather"; and it is argued that the superstructure above the deck comes within this provision of the statute.

"Breaks" and "poops" have been defined as follows:

"Break: The sudden rise of a deck when not flush; when the aft and sometimes the forepart of a vessel's deck is kept up to give more height below and at the drifts." (Sailor's Word-Book. Admiral W. H. Smyth.)

"Poop: The aftermost and highest part of a large ship's hull: also a deck raised over the afterpart of a spar deck, sometimes called the roundhouse. A frigate has no poop, but is said to be pooped when a wave strikes the stern and washes on board." (Sailor's Word-Book. Admiral W. H. Smyth.)

"Break: In a ship the part where a deck terminates and the descent to the next deck begins." (Century.)

"Break of the Poop: The forward end of the poop-deck." (Century.)

"Poop: Stern or aftermost part of a ship. A deck above the ordinary deck in the aftermost part of a ship." (Century.)

The cabin enclosed by the superstructure is let down through the tonnage deck to the bottom of the boat, so that the bottom of the boat becomes the floor for the cabin. The sides of the superstructure above the tonnage deck are the sides of the cabin exposed to the weather, and the roof of the superstructure is the roof of the cabin. The cabin is built of planking timbers, in which are set windows like a street or railway car, and has a roof of tar canvas, and water proof sides. Nothing is added by the cabin, either below the deck level or in the

enclosed space above the deck level, to the carrying area of the boat. So far as burden is concerned, the boat offers the same area, no more and no less, than if the space was open, or was covered merely by a canopy; and if the covering were that merely of a canopy, there is no claim that the break in the deck and the superstructure over it, would be a "break" or "poop" within the meaning of the law.

These facts, it seems to us, resolve the question presented in favor of the appellant. Unquestionably, the reason for adding in the calculation of tonnage, the enclosed spaces described as breaks or poops, is when, and because, such spaces add substantially to the carrying power of the boat; for in the absence of such added carrying power there would be no reason for added tonnage. And inasmuch as the superstructure presented to us adds nothing to the carrying area, it is neither within the reason for adding the area of "poops" and "breaks" or the express definition thereof. True, as the government contends, these provisions are for the safety of passengers. But there is no reason why Congress should have intended to have taken any greater precautions in the case of passengers who looked out through windows upon the weather, than of passengers who have no protection from the weather, except that of a covering or canopy, the sole difference, so far as safety is concerned, being in the presence or absence of the windows.

Following, in this holding, the ruling of the Circuit Court of Appeals for the Sixth Circuit, in U. S. v. The Ben R., 134 Fed. 784, 67 C. C. A. 290, the decree of the District Court is reversed, with instructions to dismiss the libel.