## LUMAN A. DREW *qui tam v.* JOHN HILLIKER.

*Common informer under the Act of 1882 against fishing with nets may sue in his own name. Act constitutional. Body writ may issue.*

1.  A common informer can maintain a *qui tam* action in his own name to recover the penalty given by the Act of 1882, No. 117, enacted to prohibit fishing with nets, etc., in Lake Champlain and the rivers emptying into it.
2.  The said act is constitutional. It is a proper regulation, not a prohibition, of fishing.
3.  The writ was properly issued against the defendant's body.

ACTION to recover the penalty provided in section 2 of No. 41

117 of the acts of 1882. Appeal from the City Court of Burlington. Heard on motion to dismiss, September Term, 1883, TAFT, J., presiding. Judgment *pro forma* for the defendant. The defendant moved to dismiss for that (1) the City Court and the County Court did not have jurisdiction; (2) that the plaintiff could not maintain the action in his own name as a common informer; (3) that the writ issued illegally against his body; and (4) that the statute in question is unconstitutional and void.

*A. G. Safford,* for the plaintiff.

The writ was properly issued against the defendant's body as the action is an action *ex delicto. Barnes* v. *Tenney,* 52 Vt. 557. The statute is constitutional. The prohibition is aimed at the operations of the marauder, and is intended to prevent the unnatural and wholesale destruction of fish by the use of nets. It does not prohibit all fishing, but declares the use of destructive appliances illegal. The right of the States to regulate fishing in public waters within their jurisdiction is confirmed by every writer and court having the subject under consideration. 1 Kent Com. 439; Woolr. Waters; *The King* v. *Montague,* 4 B. & C. 598; *Moulton* v. *Libbey,* 37 Me. 432. The plaintiff can sue in his own name as a common informer. *King* v. *Sainsbury,* 4 Term, 45; *Barnard* v. *Gostling,* 2 East, 569; *Fleming* v. *Bailey,* 5 East, 313; *Nye* v. *Lamphere,* 2 Gray, 295; *Davis* v. *Edmonson,* 3 Bos. & P. 382; *Waters* v. *Day,* 10 Vt. 487. All objections to this law are fully disposed of by applying to this case the rules as to the interpretation of statutes as laid down by the court in *Henry* v. *Tilson,* 17 Vt. 479; *State Treasurer* v. *Clark,* 19 Vt. 129; *Ryegate* v. *Wardsboro,* 30 Vt. 746. See *Bennett* v. *Ward,* 42 Vt. 80; *Newman* v. *Waite,* 43 Vt. 587; *Lewis* v. *Brainerd,* 53 Vt. 510.

*Jed P. Ladd* and *Stephen E. Royce,* for the defendant.

The State is a party in interest, and the action should have been in the name of the State. R. L. s. 243; *People* v. *Young,* 72 Ill. 411. The act does not in terms, nor by any legitimate

Drew *v.* Hilliker.

implication, confer any right of action upon a common informer; and it has been uniformly held from the earliest record of the question down to the present time, both in England and in this country, that no action, whether *qui tam* or other, can be maintained by a common informer to recover a penalty, unless express authority to sue is conferred by the statute. This is necessarily true, both legally and logically, because a common informer, having sustained no loss or injury by the breach of a penal statute, and having no interest in the penalty until *after* it has been recovered, there is no right or interest in him upon which to base an action for the penalty. After the penalty has been collected, the informer may sustain an action against any person who holds the money for his proportion; he has then a vested interest. 1 Chit. Pl. 105; Bac. Abr. Action *qui tam* A.; 13 Pet. Abr. 196; *Barnard* v. *Gostling*, 2 East, 569; *Colburn* v. *Swett*, 1 Met. 232; *Fleming* v. *Bailey*, 5 East, 513; *Seward* v. *Beach*, 29 Barb. 239; *Chew* v. *Thompson*, 9 N. J. L. 249. There was no authority in law for issuing the writ against the body. The act is unconstitutional; the regulations contained in it are not proper:

1st. Because the act is not a regulation, but a prohibition.

2d. That it is not proper to prohibit seine fishing in the waters of Lake Champlain, within this State, unless similar prohibitions are imposed by the State of New York and the province of Canada.

3d. That there is no necessity for a restriction upon seine fishing in the interest of the inhabitants of the State, as the supply of fish, of all the desirable kinds for food which the lake affords, is largely in excess of the demand.

4th. That the supply of fish in the lake has largely and constantly increased for the past thirty years.

5th. That fishing is one of the industries of the State, affording employment and a livelihood to thousands of its inhabitants.

The opinion of the court was delivered by

POWERS, J. This action is founded upon sec. 2, No. 117, acts of 1882, which, so far as applicable to the questions raised, reads as follows :

Drew *v.* Hilliker.

"All pound net, trap net, gill net, set net, and fyke fishing, or any other device for entrapping or ensnaring fish in the waters of Lake Champlain or of the rivers emptying into said lake, not to exceed ten miles from the mouth of said river, are hereby prohibited; and any person or persons who shall fish in said waters with any such pound nets, trap nets, gill nets, set nets, fykes, or any other device for ensnaring or entrapping fish, shall forfeit the sum of one hundred dollars to be recovered in an action on the case founded on this section, one-half to be paid to the treasurer of the State, and one-half to the informer and prosecutor."

It is argued that if any informer can maintain an action *qui tam* under this statute, the fish warden named in sec. 1 of the act of 1882 can alone do so. Sec. 1 referred to provides for the appointment by the selectmen in any town of a fish warden, "who may arrest on any of the waters public or private of this State, or on the waters of Lake Champlain, or on the shores thereof, any person found violating the provisions of chapter 170 Revised Laws, or any amendment thereof, and prosecute such offenders before the proper tribunal. Such fish warden shall have the same right that a sheriff would have to demand and receive assistance in the discharge of his duty under the provisions of this chapter."

Sec. 1 is an amendment of sec. 3871, R. L., and sec. 2 an amendment of sec. 3880, R. L. The sections of the Revised Laws thus amended have no logical relationship to each other requiring them to be read together to determine their meaning; and we think, as amended by the act of 1882, they are quite as distinct and several as before. Sec. 1 of the act of 1882 creates a new executive officer, who may arrest summarily any person *found* violating *any* of the provisions of chap. 170, R. L., which "provisions" embrace the acts prohibited by s. 2, acts of 1882, as well as various other acts prohibited in said chap. 170, and contemplates the arrest of persons *in the act* of such violations; whereas s. 2 provides for the institution of proceedings *after* the commission of the particular acts prohibited by the section, and provides a special, and therefore an exclusive remedy to the persons entitled to the forfeiture.

While under s. 1 the fish warden is clothed, doubtless, with

authority to sue civilly for the forfeiture named in s. 2, it is equally clear that he may be the complainant criminally under various other sections of said chap. 170, providing for criminal proceedings.

It is settled law that an informer can in no case sue in his own name to recover a forfeiture, given in part to him, unless the right to sue is accorded by the statute raising the forfeiture. *Barnard* v. *Gostling*, 2 East, 569 ; *Esp.* P. St. 15, 56, 57 ; *Hubbell* v. *Gale*, 3 Vt. 266.

The forfeiture named in s. 2 is to be recovered in " an action on the case," and to be paid, one-half to the state treasurer, and one-half to the informer and prosecutor. If it was not the intent to give an action to the informer in his own name as prosecutor, the word prosecutor has no meaning in the section. The two sections (1 and 2) as already seen, are not to be read together ; therefore, the word *prosecutor* is not to be limited to the fish warden named in s. 1. The prosecutor under s. 2 is he who maintains the " action on the case," given by the section. If the word be given a place and meaning in the text, it is difficult to resist the conclusion that the legislature intended to give the informer power to prosecute the action.

No special formula is requisite to confer the right to sue. It is enough if it be seen that the intent was to confer the right. In many cases the formula, " who may prosecute," or, " who prosecutes," has been held sufficient to evidence the legislative intent to confer the right. In *Nye* v. *Lamphere*, 2 Gray, 295, which was an action of tort *qui tam*, to recover a forfeiture for fishing in Waquoit Bay, the statute gave the action to any person " who shall prosecute therefor." Our statute uses the noun where the Massachusetts statute uses the verb. A person, " who shall prosecute," is a " prosecutor." The right to a private action was upheld in *Nye* v. *Lamphere*, and under similar language in *Hubbell* v. *Gale*, 3 Vt. 266. As we regard the word *prosecutor* the equivalent of the words used in those cases, and are bound to give it a meaning, it follows that this action was properly brought by this plaintiff.

Drew *v.* Hilliker.

It is further argued, that the action should be dismissed for the reason that the writ issued against, and was served by arresting, the body of the defendant. The action given is an action *ex delicto*. Our statute provides that writs of attachment may issue against the goods, chattels or estate, and in certain cases, for want thereof, against the body of the defendant.

Prior to the revision of 1839, writs of attachment in actions on contracts ran against the body; but it was then provided that the body should be exempt from arrest upon such writs except in cases of absconding debtors. It has never been understood nor claimed that the right to arrest the body in actions *ex delicto* was affected by that revision. The "certain cases," referred to in the statute defining the manner in which writs of attachment may run against the body, are *all* the cases where they so run at common law not excepted by the statute. The act abolishing imprisonment for debt withdrew such actions from the established procedure of the common law. Actions on the case founded on a statute are left to be instituted according to the forms of the common law.

The officer for want of goods and chattels may arrest the body of the defendant. The officer acting under a power given by law is presumed to have followed the law—to have arrested the body because of the "want of goods and chattels." There is no pretence that in this case he found, could find, or had pointed out to him, attachable goods. He was bound therefore to follow the command of his writ and arrest the body.

It is urged that the act in question is unconstitutional, on the ground that it is not a "proper regulation" of the right of fishing, but a prohibition of the right.

The constitution declares Sec. 40, chap. 2, that, "The inhabitants of this state shall have liberty in seasonable times, to hunt and fowl on the lands they hold, or on other lands not inclosed ; and in like manner to fish in all boatable or other waters (not private property) under proper regulations, to be hereafter made by the general assembly."

Liberty to fish under this clause of the constitution is not an absolute, untrammeled right, but a right under a limitation. It

is a right to fish at *seasonable times* and under *proper regulations.*

The act in question does not prohibit *all* fishing, but certain kinds of fishing, which the legislature has deemed destructive both to the supply of fish and to the equal chance and right of all the inhabitants to engage in fishing. The right reserved is to " the inhabitants of this State." It is a general right that is to be *preserved*, not destroyed ; and if the legislature preserves the supply by restricting the use of devices calculated to exhaust it, such " regulation " is manifestly "proper." The clause confers the power of regulation upon the general assembly ; and the courts will not hold the action of that body unconstitutional unless it is shown to be such beyond fair and reasonable doubts. *Bennington* v. *Park*, 50 Vt. 178.

The *pro forma* judgment of the County Court dismissing the action is reversed and the case remanded.