## WILLIAMS v. WELLS FARGO & CO. EXPRESS.

(Circuit Court of Appeals, Eighth Circuit. March 3, 1910.)

### No. 3,047.

1. PENALTIES (§ 24*)—PARTIES PLAINTIFF—QUI TAM ACTIONS—INFORMERS.

Though there must be either express statutory authority authorizing an informer to prosecute an action for statutory penalty in his own name, or such right must be given by necessary implication, else it will be denied, yet, where a statute gives a portion of the recovery to an informer who prosecutes the suit, it contains sufficient implied authority to support an informer's prosecution in his own name.

[Ed. Note.—For other cases, see Penalties, Cent. Dig. § 21; Dec. Dig. § 24.*]

2. POST OFFICE (§ 52*)—POST ROADS—USE BY EXPRESS COMPANY—PENALTIES—SUIT BY PRIVATE INFORMER—CAPACITY TO SUE.

Rev. St. §.3982 (U. S. Comp. St. 1901, p. 2712), prohibits the establishment of a private express for the conveyance of letters or packets over any post road, and provides that any person violating the section shall be liable to a penalty of $150 for each offense; section 4059 declares that all penalties imposed for a violation of law affecting the Post Office Department shall be recoverable one half to the use of the person informing and prosecuting the same and the other half to the use of the Post Office Department; but section 919, constituting part of the act regulating procedure in federal courts, commands that all suits for the enforcement of a penalty arising under the postal laws shall be brought in the name of the United States. Held, that a suit to recover a penalty for the alleged violation of section 3982 could not be brought by a private prosecutor, but was maintainable only by and in the name of the United States.

[Ed. Note.—For other cases, see Post Office, Dec. Dig. § 52.*]

3. POST OFFICE (§ 29*)—POSTAL DEPARTMENT—GOVERNMENTAL MONOPOLY.

While Congress has full constitutional power to reserve to the postal department a monopoly of the business of receiving, transmitting, and delivering mails, and in the exercise of such right may enact such rules, regulations, and laws as will effectively preserve its monopoly and prescribe fines, penalties, forfeitures, and punishments therefor, yet this monopoly is intended to extend only to letters, packets of letters, and the like mailable matter; and Congress has never attempted to extend its monopoly to the transportation of merchandise in parcels weighing less

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

than four pounds, nor to prohibit private express companies making regular trips over established post routes from engaging in the business of carrying such parcels for hire.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 49; Dec. Dig. § 29.*]

**4.** POST OFFICE (§ 29*)—POSTAL MONOPOLY—"LETTERS OR PACKETS."

The word "packet," as used in Rev. St. § 3982, prohibiting the establishment of any private express for the conveyance of letters or packets over post routes, is limited to its original meaning throughout the postal laws to cover only a written communication of four or more sheets, which by Act March 2, 1827, § 5, c. 61, 4 Stat. 238, was required to pay quadruple postage, and does not include a "packet of merchandise" not exceeding four pounds sent by mail.

[Ed. Note.—For other cases, see Post Office, Dec. Dig. § 29.*]

In Error to the District Court of the United States for the Western District of Arkansas.

Action by Nathan B. Williams, as informer on his own behalf and on behalf of the United States of America, against the Wells Fargo & Co. Express. A demurrer to the information was sustained, and plaintiff brings error. Affirmed.

Nathan B. Williams, pro se.

Charles W. Stockton and Edgar P. Mann, for defendant in error.

Before SANBORN, Circuit Judge, and CARLAND and POLLOCK, District Judges.

POLLOCK, District Judge. This action was brought by Nathan B. Williams, as informer, to recover from defendant, the Wells Fargo & Co. Express, a penalty of $150. The manner in which it is claimed defendant violated the law, and subjected itself to the payment of this penalty sought to be recovered, as charged in the information, is as follows:

"That the defendant, Wells Fargo & Co. Express, has established and has in operation within the Ft. Smith Division of the Western District of Arkansas, and between points and places therein and divers other places, a private express for the conveyance for hire of packets by regular trips and at stated periods over post routes established by law, and particularly did said defendant, Wells Fargo & Co. Express, on the 27th day of February, 1907, so operate such private express between the city of Chicago, in the state of Illinois, and the city of Fayetteville, in the state of Arkansas, and that between said cities the mail is regularly carried; and that said defendant, Wells Fargo & Co. Express, did on the date aforesaid accept and carry for hire a certain packet, to wit, of merchandise, and, to wit, of the weight of 16 ounces, and, to wit, addressed to Williams & Buchanan of Fayetteville, Ark.; and did carry said packet and deliver the same to the said Williams & Buchanan on the date aforesaid, and dates immediately thereafter; and that the said defendant, Wells Fargo & Co. Express, did carry said packet over a post route established by law; and that said packet was not in its form or nature liable to destroy, deface, or otherwise damage the contents of the mail bag or harm the person of any one engaged in the postal service."

Against this information defendant lodged its demurrer based on two grounds: (1) Want of legal capacity in plaintiff as informer to maintain the action; (2) want of sufficient statement of facts to warrant recovery of penalty. This demurrer was by the court sus-

tained generally. Plaintiff refusing to plead over, judgment was entered for defendant. Plaintiff brings error.

If either ground of demurrer be well taken, the judgment must be affirmed.

While the statutory provision of the law claimed by plaintiff to have been violated by defendant is not indicated in the information, it is manifest from the nature of the acts charged against defendant the pleader had in mind section 3982, Rev. St. (U. S. Comp. St. 1901, p. 2712), which provides as follows:

"No person shall establish any private express for the conveyance of letters or packets, or in any manner cause or provide a conveyance of same by regular trips or at stated periods, over any post route which is or may be established by law, or from any city, town, or place to any other city, town, or place between which the mail is regularly carried; and every person so offending, or aiding or assisting therein, shall for each offense be liable to a penalty of one hundred and fifty dollars."

Therefore, the question first arising for disposition is: May the plaintiff, a private citizen, charged by law with the performance of no public duty, on his own initiative as informer bring and prosecute this information to recover the penalty prescribed for a violation of the act? In this regard it is the insistence of plaintiff his right to so do is clearly authorized by section 4059, Rev. St., which provides as follows:

"All penalties and forfeitures imposed for any violation of law affecting the Post Office Department for its revenue or property shall be recoverable, one half to the use of the person informing and prosecuting for the same, and the other half to be paid into the Treasury for the use of the Post Office Department, unless a different disposal is expressly prescribed. All fines collected for violations of such laws shall be paid into the Treasury for the use of the Post Office Department." Act June 8, 1872, c. 335, 17 Stat. 292, 325 (U. S. Comp. St. 1901, p. 2757).

On the contrary, it is contended by the defense this information was clearly instituted by plaintiff without lawful right to so do, for that section 919, Rev. St., in express terms requires an action in the nature of an information to recover the penalty provided for in this section must be brought in the name of the United States. That section provides:

"All suits for the recovery of any duties, imposts, or taxes, or for the enforcement of any penalty or forfeiture provided by any act respecting imports or tonnage, or the registering and recording or enrolling and licensing of vessels, or the internal revenue, or direct taxes, and all suits arising under the postal laws, shall be brought in the name of the United States."

It is further contended by the defense, as Congress has by section 292, Rev. St., imposed on the Sixth Auditor of the Treasury the duty of superintending the collection of all penalties and forfeitures imposed for any violation of the postal laws, that section evinces a legislative interpretation opposed to the right claimed by plaintiff as informer to prosecute this action. That section reads as follows:

"The Sixth Auditor shall superintend the collection of all debts due the Post Office Department, and all penalties and forfeitures imposed for any violation of the postal laws, and take all such other measures as may be authorized by law to enforce the payment of such debts and the recovery of such penalties and forfeitures. He shall also superintend the collection of all pen-

alties and forfeitures arising under other statutes, where such penalties and forfeitures are the consequence of unlawful acts affecting the revenues or property of the Post Office Department."

The question thus presented of the right of plaintiff to bring and prosecute this information is embraced by some doubt, for, while plaintiff has cited many authorities which it is claimed support his right, yet, from an examination of the authorities cited and independent investigation made, we fail to find the statutory provisions above quoted to have received judicial construction from any court of the land, and no authoritative decision is pointed out in briefs of counsel. Therefore, the question presented must be ruled by the application of the general principles of the law to the language employed in the act.

It would seem at the common law actions to recover penalties prescribed by the law were often prosecuted by what was known as "common informers." Blackstone's Commentaries, Book 3 [Coolidge Ed.] 160, and when a portion of the penalty recovered went to the person or persons informing, and a portion to the sovereign, the action was styled a "qui tam action." While it has been held there must be either express statutory authority authorizing an informer to prosecute in his own name, or such right must be given by necessary implication, else such authority will be denied (Barnard v. Gostling, 2 East, 569; Flemming v. Bailey, 5 East, 313; Colburn v. Swett, 1 Metc. [Mass.] 232), yet, on the contrary, it has been ruled where a statute gives a portion of the recovery to an informer who prosecutes for the same, as does section 4059 above quoted, such statute contains sufficient implied authority to support a prosecution by an informer in his own name. Adams, Qui Tam, v. Woods, 2 Cranch, 336, 2 L. Ed. 297; United States v. Griswold, Fed. Cas. No. 15,266; Vandeventer v. Van Court, 2 N. J. Law, 168; Megargell v. Hazleton Coal Co., 8 Watts & S. (Pa.) 342; Drew v. Hilliker, 56 Vt. 641; Nye v. Lamphere, 2 Gray (Mass.) 295.

Applying the foregoing principles to the sections under consideration, it must be held, did these sections, which were, respectively, sections 23, 228, and 57 of chapter 335 of the act of June 8, 1872 (17 Stat. 288, 311, 292 [U. S. Comp. St. 1901, pp. 175, 2712, 2757]), entitled "An act to revise, consolidate and amend the statutes relating to the Post Office Department of the government," constitute the entire body of the statutory law bearing on the question under consideration, we would feel constrained to uphold the right of plaintiff, a private citizen, as informer, to bring and maintain this action, and more especially as other sections of the act from which these are taken recognize the right of an informer to prosecute in his own name for violations of the postal laws. But the question here involved is one of procedure in the federal courts, and while the language employed in section 4059, "one-half to the use of the person informing and prosecuting for the same," would, in the absence of any statutory provision to the contrary, by necessary implication, authorize the informer to bring and maintain this action as a private citizen in his own name and to the use of himself and the government, yet, as has been seen, this is beyond all peradventure a suit to recover a penalty

arising under the postal laws as provided in section 919 above quoted, and as that section forms a part of the procedure act in the federal courts, and as it in express terms commands that all such suits shall be brought "in the name of the United States," we are inclined to the opinion no other person than the United States may bring and prosecute an action to recover the penalty prescribed by section 3982, above quoted.

In this opinion we are fortified by a consideration of the fact that, as shown by the authorities cited and relied on by plaintiff as authorizing him to bring and prosecute this information in his own name, none arose under the provisions of said section 3982 above quoted, or to recover penalties prescribed for a violation of the postal laws, although, as shown by the reported cases, many in the history of the government arising under the act of which that section is amendatory have been brought and prosecuted in the name and by the authority of the United States, as will hereinafter be shown. From all of which it must have been thought the provision of the judiciary act above quoted applicable to such cases, and the lawmaking power, in its wisdom, deemed wise that the lawfully constituted authorities of the government should act on their official responsibility in cases of violation of the postal laws, as would seem to be indicated by the terms of section 292 above quoted.

Coming now to a consideration of the case in so far as the demurrer goes to the merits of the controversy, it will be noticed from that portion of the information above quoted the precise nature of the act of defendant relied on to constitute a violation of the statute is that defendant having established a private express for the conveyance of letters and packets for hire between the city of Fayetteville, in the state of Arkansas, and the city of Chicago, over a post road duly established by law, and over which road the mails are regularly carried between said cities, did accept and carry for hire over said post road and between said cities a packet of merchandise of the weight of 16 ounces. Does this information charge an infraction of the statute? While at one time questioned, there remains no doubt but that, under the constitutional authority granted, Congress may, as it has done, reserve to the postal department of the government a monopoly of the business of receiving, transmitting, and delivering the mails of the country, and in the exercise of such right of monopoly Congress may enact such rules, regulations, and laws as will effectively preserve such right of monopoly intact, and as will deter all others, including private individuals and express companies, from engaging therein, and to this end Congress may prescribe such fines, penalties, forfeitures, and punishments as it may deem proper to preserve this right of monopoly retained by the government. For this purpose section 3982 above quoted was enacted.

The question, therefore, presented concerns not the power of Congress to enact the above section, but what acts were intended to be prohibited, prevented, and punished by the language employed therein, and more especially the phrase "letters or packets," since the defendant in this case does not stand charged with the conveyance of any

letter or letters over a post road, but with conveying for hire over an established post road, between the cities named, a packet of merchandise. Has the government by its public acts, more especially the one in question, attempted to reserve to itself a monopoly of the transportation over post roads of parcels or packages of merchandise of the weight of 16 ounces? For, it is self-evident, the pleader by the expression employed in the information "packet of merchandise" intended to charge defendant with nothing more than the conveyance of a parcel or package of merchandise. The expression "letters" or "packets" occurs in the postal laws of our country from the beginning and was intended to include communications in writing conveyed from one person to another. Thus a correspondence limited to a single sheet was formerly called a single letter; two sheets a double letter; and three sheets a triple letter. All such communications composed of four or more sheets were called a packet. Thus section 13 of the act of 1825 (4 Stat. 105, c. 64), reducing into one the many statutes establishing and regulating the Post Office Department, and fixing postal rates, provided the charge for letters and packets carried, as follows:

"For every letter containing a single sheet * * * for every double letter (two pieces of paper) double that rate; for every triple letter (three pieces of paper) triple rate.

"For every packet containing four or more pieces of paper, or one or more other articles, and weighing one ounce avoirdupois, quadruple those rates; and in that proportion for all greater weights. Provided that no packet of letters conveyed by the water mails shall be charged with more than quadruple postage unless the same contain more than four distinct letters."

Section 5 of the act of March 2, 1827 (4 Stat. 238, c. 61), in fixing rates of postage, provided "quadruple postage shall be charged on all packets containing four pieces of paper."

The section under consideration is the result accruing from numerous amendments and the consolidation of separate sections of the postal laws of our country. This legislation had its counterpart in the statutes and ordinances of England. In the year 1656 the Post Office Department of the English government was first permanently established. Prior to that time the business of carrying the mails of that country, including Scotland and Ireland, was by the government farmed out by grant or patent to individuals, and prohibitory legislation was enacted to protect the patentee in his right to perform the service and receive the compensation under the grant made. That country, including her colonies in this, and in turn this country, after the Revolution, through the Post Office Department of the government, has at all times, to a greater or lesser extent, monopolized the business of carrying the mails of its citizens, of regulating the manner of conducting the business, the compensation to be paid for the services performed, and in the protection of the right of monopoly retained prohibiting all others from engaging in the business under penalties prescribed by law. Such laws enacted for the purpose of preserving the right of monopoly in the Post Office Department of the government, and preventing private express and other companies and individuals from engaging therein, have many times received the consideration of the courts of this country, as will be seen from a read-

ing of a few of the many cases. United States v. Adams et al. (S. D. New York, opinion by Betts, District Judge, 1843) Fed. Cas. No. 14,421; United States v. Pomeroy (N. D. New York, opinion by Conkling, District Judge, 1844) Fed. Cas. No. 16,065; United States v. Thompson (District Mass., Sprague, District Judge, charging jury, 1846) Fed. Cas. No. 16,489; United States v. Kochersperger (Circuit Court, E. D. Pa., opinion by Cadwalader, District Judge, 1860) Fed. Cas. No. 15,541; United States v. Thompson (Circuit Court, District of Mich., opinion by Wilkins, District Judge, 1853) Fed. Cas. No. 16,490; United States v. Express Company (Circuit Court, N. D. Illinois, opinion by Drummond, District Judge, 1869) Fed. Cas. No. 16,602; Blackham v. Gresham et al. (C. C.) 16 Fed. 609; United States v. Easson (D. C.) 18 Fed. 590; United States v. Hall (E. D. Pa. 1844) Fed. Cas. No. 15,281.

While from the foregoing cases it will be seen many questions arose touching the right of the government to be protected in its monopoly in the business of receiving, transporting, and delivering the mail matter of the country, consisting of letters or packets of letters, and touching the construction of penal laws designed to prohibit all others than the Post Office Department of the government from engaging in the business of carrying letters or packets for hire over post roads, yet in none has it been decided or even contended the word "packet" employed in the statute was designed or intended by Congress to be construed as granting the Post Office Department a monopoly of the right to receive, transport, and deliver parcels or packages of merchandise. On the contrary, the entire history of the legislation on this subject from the beginning, and the many adjudicated cases as well, show the legislative intent to have been to maintain for the government a monopoly only of the carriage of its mails, consisting of letters and packets of letters, and the like mailable matter. While it is true parcels or packages of merchandise weighing not to exceed four pounds in weight and not in nature such as liable to injure,the contents of the mail sacks of the government may be received and carried through the mails, yet that the government has neither attempted to reserve to its Post Office Department a monopoly of the transportation of merchandise in parcels or packages weighing less than four pounds, nor has prohibited private express companies or others making regular trips over established post roads or between cities where mails are regularly carried, from engaging in the business of carrying such parcels of merchandise for hire, is evident from the language employed in the opinion of the Supreme Court in Express Cases, 117 U. S. 1, 6 Sup. Ct. 542, 628, 29 L. Ed. 791. And that it has not reserved such right of monopoly in the carriage of merchandise such as was carried in this case by defendant, and perhaps lacks the constitutional power to so do, is clearly stated in the opinion delivered by Mr. Justice Field in Ex parte Jackson, 96 U. S. 727, 24 L. Ed. 877, wherein it is said:

"But we do not think that Congress possesses the power to prevent the transportation in other ways, as merchandise, of matter which it excludes from the mails. To give efficiency to its regulations and prevent rival postal systems, it may perhaps prohibit the carriage by others for hire, over postal

routes. of articles which legitimately constitute mail matter, in the sense in which those terms were used when the Constitution was adopted, consisting of letters. and of newspapers and pamphlets, when not sent as merchandise; but further than this its power of prohibition cannot extend."

It follows. from what has been said. the ruling of the trial court in sustaining the demurrer to the information was without error and must be affirmed.

It is so ordered.