**CONNECTICUT ACTION NOW, INC., et al., Plaintiffs-Appellants,**

v.

**ROBERTS PLATING COMPANY, Inc., Defendant-Appellee.**

**No. 255, Docket 71–1674.**

United States Court of Appeals, Second Circuit.

Argued Nov. 9, 1971.

Decided March 21, 1972.

---

David B. Beizer, New Haven, Conn., for plaintiffs-appellants.

Charles J. Negaro, Waterbury, Conn., for defendant-appellee.

Shiro Kashiwa, Asst. Atty. Gen., Edmund B. Clark, and Bernie Rothbaum, Jr., Attys., Dept. of Justice, Washington, D. C., for the United States, amicus curiae.

Before FRIENDLY, Chief Judge, FEINBERG, Circuit Judge, and DAVIS, Judge.*

DAVIS, Judge:

This is the eighth recorded attempt in the last year or two by environmentalists to have a federal court hold that private persons may sue in *qui tam* for fines under §§ 13 and 16 of the Rivers and Harbors Act of 1899, 33 U.S.C. §§ 407, 411, even though the Department of Justice fails or refuses to proceed under those provisions. The previous decisions have all been adverse,[1] as was the ruling below of then Chief Judge Timbers for the District Court for the District of Connecticut. 330 F.Supp. 695 (D.Conn. 1971). The Department of Justice, which filed a brief *amicus curiae* at our request, takes the same position. We agree and also hold, along with several of the earlier cases as well as the Department, that private plaintiffs, suing on behalf of the public, are similarly barred from seeking to enjoin violations of § 13 (often called the Refuse Act).

The complaint alleges that the defendant, Roberts Plating Company, Inc., has discharged and continues to discharge waste materials from its metal finishing plant into the navigable waters of the Naugatuck and Housatonic Rivers in

---

* Of the United States Court of Claims, sitting by designation.

1. Durning v. I.T.T. Rayonier, Inc., 325 F.Supp. 446 (W.D.Wash.1970); Bass Angler Sportsman Soc. v. United States Steel Corp., 324 F.Supp. 412 (N.D.M.D., and S.D., Ala.), aff'd per curiam on the opinion below, 447 F.2d 1304 (5th Cir. 1971); Bass Anglers Sportsman's Soc. v. United States Plywood-Champion Papers, Inc., 324 F.Supp. 302 (S.D.Tex. 1971); Reuss v. Moss-American, Inc., 323 F.Supp. 848 (E.D.Wisc.1971); United States ex rel. Mattson v. Northwest Paper Co., 327 F.Supp. 87 (D.Minn. 1971); Bass Anglers Sportsman Soc. v. Scholze Tannery, Inc., 329 F.Supp. 339 (E.D.Tenn.1971); Lavagnino v. Porto-Mix Concrete, Inc., 330 F.Supp. 323 (D. Colo.1971); Enquist v. Quaker Oats Co., 2 E.R.C. 1601 (D.Neb., May 6, 1971).

Connecticut, and into Long Island Sound, without the required permit. Plaintiff Connecticut Action Now, Inc. is a non-profit conservation-oriented body and the individual plaintiffs are citizens of Connecticut. None is a riparian owner or user, and they allege no special relationship to the particular rivers so as to set themselves apart from the general public. The complaint asserts that, although plaintiffs informed the United States Attorney of defendant's polluting activities and requested him both to prosecute and to seek an injunction, he "has not taken and will not in the foreseeable future take any action to enforce the provisions of Title 33 U.S.C. §§ 407 and 411 against this defendant polluter." Roberts Plating moved to dismiss on several grounds, including the plaintiffs' lack of standing. The District Court dismissed, holding that "[t]here is no right, prior to conviction, to maintain a private *qui tam*

action under 33 U.S.C. § 411 to recover criminal penalties for unlawful discharge into navigable waters"; that the court lacked jurisdiction under 28 U.S.C. § 2461 (dealing with recovery of a "civil fine, penalty, or pecuniary forfeiture") to entertain an action to recover a criminal fine or forfeiture; and that plaintiffs failed to plead or prove the requisite jurisdictional amount to maintain an injunctive action under 28 U.S.C. § 1331. 330 F.Supp. at 699.[1a]

*Qui tam action:* Section 13 of the 1899 statute, 33 U.S.C. § 407, forbids discharge of waste into navigable waters,[2] while § 16, 33 U.S.C. § 411, imposes the sanction.[3] Plaintiffs invoke, of course, the last clause of § 16: "one-half of said fine to be paid to the person or persons giving information which shall lead to conviction." The difficulty, as all the prior decisions on the point have noted, is that Congress has imposed a criminal penalty

1a. In light of our determination that these plaintiffs are not entitled to maintain an injunctive action, we need not consider this last point.

2. As it appears in 33 U.S.C. § 407, § 13 reads:
"It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited either from or out of any ship, barge, or other floating craft of any kind, or from the shore, wharf, manufacturing establishment, or mill of any kind, any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States, or into any tributary of any navigable water from which the same shall float or be washed into such navigable water; and it shall not be lawful to deposit, or cause, suffer, or procure to be deposited material of any kind in any place on the bank of any navigable water, or on the bank of any tributary of any navigable water, where the same shall be liable to be washed into such navigable water, either by ordinary or high tides, or by storms or floods, or otherwise, whereby navigation shall or may be impeded or obstructed: *Provided*, That nothing herein contained shall extend to, or prohibit the operations in connection with the improvement of navigable waters or construction

of public works, considered necessary and proper by the United States officers supervising such improvement or public work: *And provided further*, That the Secretary of the Army, whenever in the judgment of the Chief of Engineers anchorage and navigation will not be injured thereby, may permit the deposit of any material above mentioned in navigable waters, within limits to be defined and under conditions to be prescribed by him, provided application is made to him prior to depositing such material; and whenever any permit is so granted the conditions thereof shall be strictly complied with, and any violation thereof shall be unlawful."

3. § 16 provides (as codified in 33 U.S.C. § 411):
"Every person and every corporation that shall violate, or that shall knowingly aid, abet, authorize, or instigate a violation of the provisions of sections 407, 408, and 409 of this title shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500 nor less than $500, or by imprisonment (in the case of a natural person) for not less than thirty days nor more than one year, or by both such fine and imprisonment, in the discretion of the court, one-half of said fine to be paid to the person or persons giving information which shall lead to conviction."

to be enforced by the Attorney General, without saying or suggesting that the informer can proceed on his own against the polluter, before conviction is obtained by federal prosecutors.

█ In our jurisprudence, there is no common law right to maintain a *qui tam* action; authority must always be found in legislation. United States ex rel. Marcus v. Hess, 317 U.S. 537, 541, 63 S.Ct. 379, 87 L.Ed. 443 (1943). "It is settled law that an informer can in no case sue in his own name to recover a forfeiture given in part to him, unless the right to sue is accorded by the statute raising the forfeiture." Drew v. Hilliker, 56 Vt. 641 (1884). That is why the terms and structure of the particular statute are decisive. *Cf.* United States ex rel. McCans v. Armour & Co., 146 F.Supp. 546 (D.D.C.1956), aff'd per curiam, 102 U.S.App.D.C. 391, 254 F.2d 90 (C.A.D.C.1958), cert. denied, 358 U.S. 834, 79 S.Ct. 57, 3 L.Ed.2d 152; United

States v. Aster, 176 F.Supp. 208 (E.D.Pa. 1959), aff'd, 275 F.2d 281 (3rd Cir. 1960), cert. denied, 364 U.S. 894, 81 S.Ct. 223, 5 L.Ed.2d 188. All of the past rulings (of which we are aware) upholding a private right to sue turned on language which stated expressly or clearly implied that the informer could begin the proceeding without waiting for governmental action.[4] In Marcus v. Hess, *supra*, 317 U.S. at 540, 63 S.Ct. at 379 the most recent Supreme Court authority, the statute provided that "suit may be brought and carried on by any person, as well for himself as for the United States."

█ Even if we accept at face value the criticized dictum in *Marcus*, 317 U.S. at 541 n. 4, 63 S.Ct. at 382, that "[s]tatutes providing for a reward to informers which do not specifically either authorize or forbid the informer to institute the action are construed to authorize him to sue. Adams v. Woods, 2 Cranch 336, 6 U.S. 336, 2 L.Ed. 297,"[5] we find that the

4. *E. g.*, A statute reading: "one-half to the informer and prosecutor" (Drew v. Hilliker, *supra*); conferring a right on "persons as will sue for the same" or "to whom shall sue for the same" (Marvin v. Trout, 199 U.S. 212, 26 S.Ct. 31, 50 L.Ed. 157 (1905)); penalties recoverable one-half to the "use of the person [informing and] prosecuting the same" (Taft v. Stephens, Lith. & Eng. Co., 38 F. 28 (E.D. Mo.1889)); "to the use of him or her who shall sue for and prosecute the same" (Adams v. Woods, 2 Cranch 336, 6 U.S. 336, 2 L.Ed. 297 (1805)); "One half of such penalty ["a fine not exceeding $2,000"] shall go to the party injured by such violation and the remainder to the Government of the United States" [27 Stat. 446] (United States ex rel. Pressprich Son Co. v. James W. Elwell & Co., 250 F. 939 (2d Cir. 1918)); a suit "may be brought and carried on by any person" or "the informer, who is enabled to recover it by a civil suit". (So. Exp. Co. v. Commonwealth, 92 Va. 59, 22 S.E. 809 (1895)); "half to any person who shall prosecute therefor" (Nye v. Lamphere, 68 Mass. (2 Gray) 295, 296 (1854)); "Every person who violates this section shall be liable to a penalty of one hundred dollars, recoverable, one-half to the use of the informer" (United States v. Laescki, 29 F. 699 (N.D.Ill.1887)); a clause awarding one-half of recovery to an informer "except where the prosecution shall

be first instituted on behalf of the United States, in which case the whole shall be to their use" (United States v. Stocking, 87 F. 857 (D.Mont.1898)); "one-half of the penalty to go to the informer, and the other half to the State," and the defendant "shall be liable for all damages which shall be sustained by any person by reason of such neglect" (Chicago & Alton R. R. v. Howard, 38 Ill. 414 (1865)). See also United States v. Griswold, 26 Fed.Cas. 42 (D.Ore.1877); Rosenberg v. Union Iron Works, 109 F. 844 (N.D.Cal. 1901); Omaha etc. Ry. v. Hale, 45 Neb. 418, 63 N.W. 849 (1895).

The cases are collected in "*Qui Tam* Actions and the 1899 Refuse Act: Citizen's Lawsuits Against Polluters of the Nation's Waterways", Committee Print of the Conservation and Natural Resources Subcommittee of the Committee on Government Operations, H. of Rep., 91st Cong.2d Sess., Sept. 1970.

5. The statement is clearly *obiter* because, as indicated in the text, *supra*, the *Marcus* legislation expressly authorized suit by the informer. In addition, as has recently been observed, Adams v. Woods, *supra*, is very weak authority for the proposition. See "The Refuse Act of 1899: Its Scope and Role in Control of Water Pollution," 58 Calif.L.Rev. 1444, 1460 (1970). *Adams* dealt not with the *qui tam* problem but with the application of a statute of

legislation in this case is not neutral but leans strongly toward preclusion of the private informer. Section 413 of Title 33 is explicit that "The Department of Justice shall conduct the legal proceedings necessary to enforce the provisions of sections * * * 407 * * * of this title; and it shall be the duty of United States attorneys to vigorously prosecute all offenders against the same whenever requested to do so by the Secretary of the Army or by any of the officials hereinafter designated * * *." The statutory scheme is apparent and consistent: § 407, *supra*, note 2, establishes the offense; § 411, *supra*, note 3, provides the sanction for violations; and § 413, *supra*, directs that enforcement and prosecution proceedings be conducted by the Department of Justice. It is hard to look at this pattern except as a mandate that the Federal Government is to be the initiator of the proceeding.

Even where legislation was more confused as to the relationship between the federal responsibility for prosecution and the role of the private informer, the courts have opted for the primacy of the Justice Department. In Williams v. Wells Fargo & Co. Express, 177 F. 352 (8th Cir. 1910), the difficulty was that Rev.Stat. 4059, 17 Stat. § 325 (1872), provided that one-half of the penalties imposed for violation of laws affecting the Post Office be paid to the person "informing and prosecuting for the same", while Rev.Stat. 919 declared that "all suits arising under the postal laws, shall be brought in the name of the United States." The court held that although the former provision, taken alone, would authorize a *qui tam* suit, the sections, when read together, showed a Congressional purpose that only the United States should bring the action. Similarly, in Rosenberg v. Union Iron Works, 109 F. 844, 846 (N.D.Cal.1901), an action under the Alien Contract Labor Law of February 26, 1885, § 3, 23 Stat. 332, the statute provided that the penalty "may be sued for and recovered by the United States or by any person who shall first bring his action therefor . . . And it shall be the duty of the district attorney . . . to prosecute any case at the expense of the United States." Though the language was much stronger in its intimation of a *qui tam* proceeding than here, the opinion insisted that all actions must be commenced by the United States Attorney.[6]

Moreover, the plain implication of the format of § 411, with its language of "misdemeanor", "on conviction", "to conviction", "fine" or "imprisonment", "fine and imprisonment", is that there must be

---

limitations to civil and criminal actions. The Court noted that almost every fine or forfeiture under a penal statute may be recovered by an action of debt as well as of information. "In this particular case, the statute which creates the forfeiture does not prescribe the mode of demanding it; consequently either debt or information would lie", *id.* 6 U.S. at 341; the holding was that limitations barred either type of action. Significantly, the legislation in *Adams* provided that one-half of the sum recovered would be paid "to the use of him or her who shall sue for and prosecute the same." Even if the statute did not prescribe the mode of demanding the forfeiture, it clearly gave private persons the right to prosecute.

6. Chicago & Alton R. R. v. Howard, 38 Ill. 414 (1865), does not tilt the other way. A *qui tam* action was permitted although the statute included a provision that the district attorney *may* sue when a train fails to signal at a crossing, since another section explicitly provided that one-half of the penalty "go to the informer, and the other half to the state" and that the corporation "shall be liable for all damages which shall be sustained by any person by reason of such neglect." The case was distinguished from statutes in which "the duty to sue is imposed on a public officer."

Appellants also refer to the False Claims Act, 31 U.S.C. §§ 231, 232, 233, but that statute is replete with provisions specifying the actions which an informer must take, the notice to the Attorney General, etc. See United States ex rel. Marcus v. Hess, *supra*, 317 U.S. 541, 63 S.Ct. 379, United States v. Griswold, *supra*, 26 Fed.Cas. 42. Enacted in the 19th century like the Rivers and Harbors Act—1863 compared to 1899—it serves to indicate that where a Congress of that era conceived of an informer's independent suit, it expressly authorized it.

a criminal proceeding, a conviction obtained as a result of that proceeding, and the imposition of a discretionary fine or sentence of imprisonment as punishment for the crime. In this respect, the statute is the same as § 4 of the Smuggling Act of July 18, 1866, 14 Stat. 178, 179, which United States v. Claflin, 97 U.S. 546, 547, 24 L.Ed. 1082 (1878), summarily held "contemplated a criminal proceeding and not a civil action of debt. It imposed a penalty for receiving, concealing, buying, selling, or in any manner facilitating the transportation, concealment, or sale of goods illegally imported. The penalty was a fine on conviction, not exceeding $5,000 nor less than $50, or imprisonment, or both, at the discretion of the court. It is obvious, therefore, that its provisions cannot be enforced by any civil action, certainly not in an action of debt."

Appellants discern a conflict between *Claflin* and Stockwell v. United States, 13 Wall. 531, 80 U.S. 531, 20 L.Ed. 491 (1871), written by the same justice, but in that earlier case (allowing civil recovery by the Government) the sanction was not a variable fine or imprisonment, to be imposed by the sentencing judge, but simply forfeiture of double the amount of the illegally imported goods. Hepner v. United States, 213 U.S. 103, 29 S.Ct. 474, 53 L.Ed. 720 (1909), which permitted recovery by the United States of an immigration penalty through a civil action, took pains to say (p. 108, 29 S.Ct. page 477): "Of course, if the statute by which the penalty was imposed contemplated

recovery only in a criminal proceeding, a civil remedy could not be adopted. United States v. Claflin, 97 U.S. 546." [7] Other Supreme Court cases allowing a civil penalty (United States v. Zucker, 161 U.S. 475, 16 S.Ct. 641, 40 L.Ed. 777 (1896); United States v. Regan, 232 U.S. 37, 34 S.Ct. 213, 58 L.Ed. 494 (1914)) likewise involved legislation different from §§ 407 and 411 of Title 33 in that the other action was merely for the value of illegally imported goods (*Zucker*) or for a sum certain "which may be sued for and recovered by the United States, or by any person who shall first bring his action therefor in his own name and for his own benefit * * *" (*Regan*).

The characterization of § 411 as dominantly criminal serves also to dissipate appellants' reliance on 28 U.S.C. § 2461 (a):

Whenever a civil fine, penalty, or pecuniary forfeiture is prescribed for the violation of an act of Congress without specifying the mode of recovery or enforcement thereof, it may be recovered in a civil action.

We have pointed out that the fine referred to in § 411 is not a civil fine but as in United States v. Claflin, *supra*, a criminal fine to be imposed in a criminal proceeding.[8]

█ It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not as has sometimes been done in Anglo-American jurisdic-

7. Immediately thereafter, the *Hepner* opinion stresses the civil and very different character of the penalty in that case (213 U.S. pp. 108–109, 29 S.Ct. p. 477): "But there can be no doubt that the words of the statute on which the present suit is based are broad enough to embrace, and were intended to embrace a civil action to recover the prescribed penalty. It provides that the penalty of one thousand dollars may be 'sued for' and recovered by the United States or by any 'person' who shall first bring his 'action' therefor 'in his own name and for his own benefit,' 'as debts of like amount are now recovered in the courts of the United States;' and 'separate suits' may be brought for each

alien thus promised labor or service of any kind. The district attorney is required to prosecute every such 'suit' when brought by the United States. These references in the statute to the proceeding for recovering the penalty plainly indicate that a civil action is an appropriate mode of proceeding."

8. Because of *Claflin*, it is doubtful that the United States could proceed under § 411 to collect a fine by civil action, but in any event the mandate of § 413, *supra*, that "the Department of Justice shall conduct the legal proceeding necessary to enforce the provisions of sections * * * 407 * * *" bars the private informer.

tions by private complaints. See, *e. g.*, Keenan v. McGrath, 328 F.2d 610 (1st Cir. 1964). Appellants, who insist that § 411 envisages a civil action, do not challenge this fundamental theorem, but it has been suggested elsewhere that the 1899 refuse-discharge statute may have created a limited form of exception.[9] This hypothesis starts by noting that 33 U.S.C. § 413, *supra*, says in directive words that "it shall be the duty" of the United States Attorney to prosecute where the statutorily designated officials have requested enforcement.[10] The point is then made that there is a distinction between proceedings where these officers have asked for action (and the duty to prosecute is said to be mandatory, *cf.* State of South Carolina ex rel. Maybank v. South Carolina Elec. & Gas Co., 41 F. Supp. 111 (E.D.S.C.1941)) and actions where the information for enforcement comes from other sources (and the duty to prosecute is said to be discretionary).[11] In the latter event, the suggestion goes, the private informer can bring a proceeding if the Department of Justice exercises its discretion not to.

We can assume *arguendo* without deciding that there is this separation between types of prosecution, mandatory and discretionary, without agreeing to the corollary that, with respect to the discretionary category, the private citizen can make himself a private attorney general if the official Attorney General will not come forward. It has been said that, in the exercise of prosecutorial discretion where it exists, the Department of Justice is immune from control or interference by citizen or court (see, *e. g.*,

Smith v. United States, 375 F.2d 243, 246–248 (5th Cir. 1967), cert. denied, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106; United States v. Cox, 342 F.2d 167 (5th Cir. 1965), cert. denied, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700), and the federal discretion has been called "absolute" and "sacrosanct." 375 F.2d at 247, 248. Even if this broad proposition is no longer correct, the remedy does not lie in allowing a private citizen to supersede the prosecutor unless Congress has so directed. We see no hint in the 1899 Act that Congress intended to authorize a private individual to substitute his own judgment for that of the Department as to whether a discretionary criminal proceeding should be brought, or to institute a private civil action for the fine, in lieu of the criminal process the Attorney General refuses to invoke. See State of South Carolina v. South Carolina Electric & Gas Co., *supra*, 41 F.Supp. at 118–119.[12]

Everyone knows that there are often solid, or at least substantial, grounds for failing to prosecute even though a *prima facie* case can be made. See Smith v. United States, *supra*, 375 F.2d at 247–248. In this very field, the Government has chosen to be selective in invocation of the Refuse Act. The Department of Justice has issued guidelines for litigation under the 1899 statute, see 1 E.R.C. 288 (June 13, 1970), which indicate certain areas in which it deems prosecution inadvisable. These guidelines are an effort at coordination to avoid using the refuse-discharge statements so as to interfere with the Federal Water Pollution Control Act or state pollution abatement

---

9. See "The Refuse Act: Its Role Within the Scheme of Federal Water Quality Legislation", 46 N.Y.U.L.Rev. 304, 343–49 (1971).

10. These include the Secretary of the Army, officers and agents in charge of river and harbor improvements and the assistant engineers and inspectors, and United States collectors of customs and other revenue.

11. It is clear that prosecution can be founded on information obtained elsewhere than from the specified officials. United States v. Burns, 54 Fed. 351 (C.C.W.Va.

1893); United States v. Interlake Steel Corp., 297 F.Supp. 912 (N.D.Ill.1969).

12. United States v. Griswold, *supra*, 26 Fed.Cas. 42 (D.Ore., 1877) in which there was ample explicit authorization for a *qui tam* suit, may stand for the proposition that, once an authorized *qui tam* suit is begun, the Federal Government may not interefere with its prosecution, but the decision in no way suggests that, wherever criminal enforcement is discretionary, a private citizen may sue to recover the penalty. On Chicago & Alton R. R. v. Howard, 38 Ill. 414 (1865), see note 6, *supra*.

laws. Federal district attorneys are encouraged to use the 1899 Act to punish accidental or infrequent discharges but not those of a continuing nature, since it is for the elimination of the latter type that Congress created the Federal Water Quality Administration. Also, United States Attorneys may not initiate proceeding on their own authority (without permission from the Department) against three types of violators: (1) states and municipalities where the conduct violating the statute was authorized by governmental entities; (2) persons or firms whose acts are the subject of a proceeding conducted by the Environmental Protection Administration; (3) persons or firms who are the subjects of state, county or municipal litigation.

We do not know why prosecution of Roberts Plating was declined or whether these guidelines are in any way involved. Neither, obviously, are we called upon to approve or disapprove the rules the Department has set for itself. They are only relevant here to show that prosecutorial discretion can be more than ad hoc or haphazard—can be planned, for instance, to harmonize with additional means of achieving an ultimate goal, such as enforcement of other legislation or by other public bodies.[13] In these circumstances, it could well be highly disruptive to permit intervention in Refuse Act enforcement by a private citizen not charged with general responsibility or oversight.

■ For these reasons, we must agree with all the prior decisions in point that a private informer's only right under § 411 can be to one-half of any fine which has been imposed after conviction in a criminal proceeding brought by the United States.

■ *Injunction:* Recent opinions have made it clear that the Federal Government may seek injunctive relief against conduct violating several provisions of

the 1899 Act, including § 407. United States v. Republic Steel Corp., 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960); Wyandotte Transp. Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967); United States v. Florida Power & Light Co., 311 F.Supp. 1391 (S.D.Fla., 1970); Bass Anglers Sportsman's Soc. v. Scholze Tannery, Inc., *supra*, 329 F.Supp. 339, 347–348 (E.D. Tenn.1971); United States v. Armco Steel Corp., 3 E.R.C. 1067 (S.D.Tex., Sept. 17, 1971). In United States v. Perma Paving Co., 332 F.2d 754, (2d Cir. 1964), this court held that the United States was entitled to recover money damages for the removal of an obstruction of a channel of a navigable stream caused by the defendant's misuse of riparian land. But *Perma Paving* specifically reserved the issue "whether the statute creates rights on behalf of persons injured by an obstruction to navigation" (332 F.2d at 758), and that question, together with the broader issue of the right of a self-appointed public representative to bring suit, remains wholly undecided in this circuit. In the Fifth Circuit any right in a private individual, acting on behalf of the public, to ask for an injunction has been denied. Bass Angler Sportsman's Soc. v. U. S. Plywood-Champion Paper, Inc., *supra*, 324 F.Supp. 302 (S.D.Tex.1971); Bass Angler Sportsman Soc. v. United States Steel Corp., *supra*, 324 F.Supp. 412 (N.D., M.D., and S.D., Ala.1971), aff'd per curiam on the opinion below, 447 F.2d 1304 (5th Cir. 1971); see, also, Guthrie v. Alabama By-Products Co., 328 F.Supp. 1140 (N.D. Ala.1971) (no right in riparian owners seeking to enjoin pollution unrelated to navigation). Also rejecting any right in the citizen to act for the public is Bass Anglers Sportsman's Soc. v. Scholze Tannery, Inc., *supra*, 329 F.Supp. 339 (E.D.Tenn.1971).

Several of the considerations discussed above with respect to *qui tam* have their

---

13. For discussions of the relationship of the Refuse Act to other water pollution legislation, see "The Refuse Act: Its Role Within the Scheme of Federal Water Quality Legislation", 46 N.Y.U.L.Rev. 304 (1971), and "Panel Discussion on the Refuse Act of 1899", 30 Fed.B.J. 327 (1971).

impact also on the injunctive phase of the case. There is, first of all, the very broad phrasing of § 413: "The Department of Justice shall conduct the legal proceedings necessary to enforce the provisions of section \* \* \* 407 \* \* \* of this title \* \* \*." This instruction is not limited in wording to criminal prosecutions but on its surface concerns all "legal proceedings necessary to enforce" the statute. This would ordinarily cover injunctions as well as criminal process. Cf. United States v. Perma Paving Co., 332 F.2d 754 (2d Cir. 1964).

Perhaps it can be said that damage suits by riparian owners or others specially injured by improper refuse-discharge, or even requests for injunctive relief by that narrow class of persons, are not such "legal proceedings necessary to enforce" the Act—we do not have those problems before us and intimate no opinion—but appellants' suit is expressly on behalf of the general public,[14] not of any person specially hurt, and in that respect is obviously intended as a substitute for, and equivalent of, an injunctive action by the Federal Government. The clear congressional purpose, it seems to us, was to concentrate at least this type of public and general enforcement in the Department. If both the Attorney General and private individuals could institute enforcement proceedings, there would only be a difference of degree, between criminal prosecutions and civil injunction suits, in the possibilities of conflict and disruption. A careful federal decision not to seek an injunction because of some general policy, or in view of other means of ending or alleviating the discharge,

could be upset by any individual who thought he understood better the needs of the public. We doubt that the 1899 Congress, when it enacted § 413, envisaged that the theory of participatory democracy would be carried so far.

Decisions like Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L. Ed.2d 184 (1970), Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), and Scenic Hudson Preservation Conf. v. F.P.C., 354 F.2d 608 (2d Cir. 1965), cert. denied, 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 540 (1966),[15] did not involve a provision like § 413 and, in any event, are significantly different. Those were cases challenging administrative action by federal officials and the judicial review provisions of the Administrative Procedure Act (5 U.S.C. §§ 701–06) were necessarily implicated. See Association of Data Processing Service Organization v. Camp, *supra*, 397 U.S. at 153–154, 157, 90 S.Ct. 827, 25 L.Ed.2d 184. It is one thing to reduce the showing of legal wrong, adverse effect, or aggrievement (see 5 U.S.C. § 702) when a citizen seeks judicial scrutiny of actions proposed to be taken by the Government, and quite another to allow one citizen to bring suit on behalf of the general public against a private individual who has done no more harm to him than to all the others comprising the public. In the former case, the question is who may ask the courts to keep government itself within lawful bounds. The latter deals with the separate issue of who may represent the public in seeking to confine private in-

---

14. Appellants' brief says: "Plaintiffs can fairly and adequately represent the public interest which is in jeopardy of being tragically compromised" (p. 33) and "Plaintiffs in the instant case—a non-profit conservation organization whose express *raison d'etre* is to clean up Connecticut's environment and two of its officers—are surely of that class of citizens who are not only the beneficiaries of the regulatory scheme Congress enacted to preserve the quality and character of our waterways but indeed are the very citizens who can best monitor and prevent con-

tinuance of the activities of those who abuse these waterways" (p. 31).

15. Others in the same general vein are: Norwalk Core v. Norwalk Redevelopment Agency, 395 F.2d 920 (2d Cir. 1968); Citizens' Committee for the Hudson Valley v. Volpe, 425 F.2d 97 (2d Cir. 1970), cert. denied, 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256; Office of Communication of United Church of Christ v. F.C.C., 123 U.S.App.D.C. 328, 359 F.2d 994 (1966); Environmental Defense Fund v. Hardin, 428 F.2d 1093 (D.C.Cir. 1970).

dividuals within the law. To allow any citizen to perform that function, normally fulfilled by the Government, would obviously raise grave problems for equal, fair, and consistent law enforcement. We are all the more reluctant to touch off the centrifugal tendencies of a multitude of private public-representatives where, as here, Congress has specifically indicated its concern that central control over enforcement be lodged in one agency of the Government.

Similarly, our problem differs markedly from J. I. Case v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), and comparable decisions in which a private cause of action was inferred from legislation prohibiting certain conduct. The claimant in each of those cases had been or could be financially injured by the unlawful conduct, and the court also thought that the statute on which he relied was designed to protect his particular group, as distinguished from the general public. Borak would only be in point if it had permitted a plaintiff owning no stock in the corporation to sue the company for false and misleading proxy statements because, as a matter of personal convic-

tion, he strongly disapproved of tainted proxy solicitations and, as a matter of public policy, believed that misleading proxy solicitations are a general menace to the free enterprise system. Of course that was not Borak (or any of the other cases in the same line). Instead of a private claim for relief for a specific private injury, as in those decisions, what we have here is an action by parties claiming to be surrogates for the public over and above the normal and official representative of the public interest.[16]

Taking the 1899 Act as it now stands, we have no difficulty in joining the other courts which have considered the question in holding that a private citizen or group, no matter how competent or well-intentioned, cannot sue on behalf of the public to enforce by injunction the refuse-discharge provisions of § 407. If a change is to be made, it should be by Congress which has had before it a number of bills to authorize such actions (see Guthrie v. Alabama By-Products Co., supra, 328 F.Supp. at 1148–1149) and can decide if, and to what extent, citizens' suits should be authorized.[17]

Affirmed.

16. Whether a private claimant specifically injured by a violation of § 407—a riparian owner, for instance—can sue for an injunction or damages is an issue not now before us, and we do not reach it. A strong case against the right, at least where the injury is not related to navigation, is made in Guthrie v. Alabama By-Products Co., supra, 328 F.Supp. 1140 (N.D.Ala.1971). That opinion notes that "a principal beneficiary of the Act, if not the principal beneficiary, is the Government itself" (Wyandotte Transp. Co. v. United States, 389 U.S., supra, at 201, 88 S.Ct. at 386), and points out that the Act includes provisions regulating all kinds of obstructions in navigable waters (33 U.S.C.A. §§ 401, 406) ; providing for establishment of harbor lines and prohibiting encroachments (33 U.S.C.A. § 404) ; regulating the creation and providing for the removal of all kinds of obstructions (33 U.S.C.A. §§ 403, 409, 414–15) ; regu-

lating deposits of refuse in and adjacent to navigable waters (33 U.S.C.A. § 407) ; prohibiting injuries to river and harbor improvements (33 U.S.C.A. § 408) ; and providing for criminal penalties (33 U.S.C.A. § 411–13). "It is clear that these provisions were part of the efforts by Congress to maintain the nation's navigable waterways, as routes of commerce, free from obstructions." 328 F.Supp., supra, at 1145. A review of the legislative history leads the court to conclude that the statute was enacted for the purpose of protecting navigation and anchorage and not as a general pollution control statute, or to create a private right of action unrelated to navigation. Id. at 1146–1148

17. A limited form of citizens' suit has recently been created by § 304(a) of the Clean Air Act Amendment of 1970, 42 U.S.C. § 1857h–2.